BURRITT MUTUAL SAVINGS BANK OF NEW BRITAIN *v.* STANLEY V. TUCKER ET AL.

BOGDANSKI, PETERS, SHEA, WRIGHT and BIELUCH, Js.

Argued December 5, 1980—decision released April 7, 1981.

*Stanley V. Tucker,* pro se, the appellant (defendant.)

*Dean F. Radke,* for the appellee (plaintiff).

SHEA, J. The named defendant[1] has appealed from a judgment of strict foreclosure of a mortgage upon an apartment building which he owned and also from two contempt orders ancillary to the foreclosure proceeding. A plethora of issues has been raised which may conveniently be classified

---

[1] Only the named defendant has appealed from the foreclosure judgment which also affected the interests of several subsequent encumbrancers who were made parties defendant. In this opinion the term "defendant" refers to the named defendant unless otherwise indicated.

into those relating to the rendition of the foreclosure judgment and those relating to the findings of contempt.

## I

The defendant has attacked the judgment of strict foreclosure on several grounds: (1) that he was improperly defaulted for failure to plead; (2) that the finding of the amount of the mortgage debt was improperly based upon an affidavit of debt and included taxes which had not been pleaded; (3) that attorney's fees were allowed without any evidentiary basis; (4) that costs were taxed by the clerk without any notice; (5) that the finding of the value of the property being foreclosed was not supported by the evidence; (6) that our strict foreclosure procedure unconstitutionally deprives an owner of his property without due process of law; and (7) that the trial judge was biased and should have disqualified himself.

The return day for the complaint which commenced this action was October 17, 1978. Responsive pleadings, therefore, were required to be filed by November 1, 1978. Practice Book § 114. On November 16, 1978, a continuance of three months was ordered upon motion of the defendant in accordance with General Statutes § 52-87, because three other defendants resided out of state. This continuance had expired by February 23, 1979, when the court entered a default for failure to plead against the defendant. On the previous day the defendant had filed a motion to dismiss the complaint which claimed a lack of subject matter jurisdiction. The grounds set forth in this motion were that the mortgage delinquencies had occurred because a receiver

appointed at the request of another creditor in a separate proceeding had taken control of the property and also because the defendant planned to bring the payments on the property current with a second mortgage. At the argument of this motion it appeared that the defendant was relying upon General Statutes § 42a-1-208, a provision of the Uniform Commercial Code which restricts the exercise of a right to accelerate payment of an obligation at will by imposing a requirement that the creditor must believe in good faith that the prospect of payment has been impaired. This statute was plainly inapplicable because the Code does not purport to cover real estate mortgage transactions (See § 42a-9-104 [j]) and because the basis for acceleration of the debt alleged in the complaint was a default in paying an installment, not a provision allowing acceleration at will. It is equally clear that any claim based upon this statute, as well as the grounds set forth in the motion to dismiss, went to the merits of the complaint rather than to the jurisdiction of the court over the subject matter. The motion to dismiss was, therefore, incorrectly used to assert the defendant's claims and the trial court properly denied it. Practice Book § 143.

After the motion to dismiss had been denied, the defendant sought a delay of two weeks to allow time to file another pleading in response to the complaint. He relied upon Practice Book § 114, which requires that pleadings advance at least one step within each successive period of fifteen days from the filing of a decision of the court upon a preceding pleading. The trial court refused this request on the ground that the motion to dismiss had been spurious and proceeded to grant the plaintiff's motion for a default for failure to plead.

Although we are inclined to be indulgent of lay persons like the defendant who represent themselves in legal proceedings, we have decided that there is a sufficient basis in the record to support the action of the trial court in ordering that the defendant be defaulted. The statutory continuance which had been ordered for the benefit of the nonresident defendants did not suspend the defendant's duty to file a pleading within fifteen days after the return day. An erroneous but bona fide belief on the part of the defendant that he was not required to plead until the statutory continuance had expired would not have warranted the entry of a default. The utter worthlessness of the motion, which was filed the day before the scheduled foreclosure hearing, to raise either a jurisdictional question or a defense to the complaint, as well as the failure of the defendant to suggest some defense of at least arguable merit in making his request for additional time to plead after the motion had been denied, indicate that his only purpose was to delay the proceeding. Under these circumstances we can find no abuse of discretion by the trial court in refusing his request and in ordering the default. "The design of these rules being to facilitate business and advance justice, they will be interpreted liberally in any case where it shall be manifest that a strict adherence to them will work surprise or injustice." Practice Book § 6; *Snow* v. *Calise,* 174 Conn. 567, 574, 392 A.2d 440 (1978). Courts have an inherent power to disregard sham or frivolous pleadings which have been interposed for the purpose of thwarting the orderly progress of a case. 20 Am. Jur. 2d, Courts § 79; 61 Am. Jur. 2d, Pleading § 26; see *Kennedy* v. *Creswell,* 101 U.S. 641, 644, 25 L. Ed. 1075 (1880) ; *Metropolis Mfg. Co.* v. *Lynch,* 68 Conn. 459, 472, 36 A. 832 (1896). That the defendant had no other purpose is further

demonstrated by his failure in a motion to set aside the default which he filed a few days later to specify any defense to the action which would warrant serious judicial consideration.[2] Even if we would have differed, in the first instance, about the propriety of the judgment of default for failure to plead, we would be reluctant to find an abuse of discretion and to remand a case for a new trial where there is nothing in the record to suggest that a meritorious defense may exist. *A.D.C. Contracting & Supply Corporation* v. *Thomas J. Riordan, Inc.,* 176 Conn. 579, 581, 409 A.2d 1027 (1979); *Jacobson* v. *Robington,* 139 Conn. 532, 536, 95 A.2d 66 (1953); see *Bellonio* v. *V. R. Thomas Mortgage Co.,* 111 Conn. 103, 105, 149 A. 218 (1930).

After the entry of the default the court proceeded to ascertain the amount of the mortgage debt upon the basis of an affidavit signed by an officer of the plaintiff bank. The defendant objected to the use of the affidavit because he disputed the amounts shown thereon for principal, interest, taxes, and late charges. He asserted that the bank officer should have been there to testify. The trial court, after allowing the defendant to testify about his own calculation of the debt, which amounted to $132,832.00, found the debt to be $141,336.28, as claimed in the affidavit.

---

[2] The grounds set forth in the motion to set aside the default were (1) that the expiration of the statutory continuance of three months pursuant to General Statutes § 52-87 on February 16, 1979, allowed the defendant fifteen days beyond that date to plead; and (2) that he "has a good defense on agreement to pay mortgage current by means of a second mortgage." The first ground does not go to the merits of the action. The second ground is ambiguous, but at no time, even during this appeal, has the defendant claimed that the plaintiff made any agreement with him concerning a refinancing of the building.

The plaintiff claims that the court's reliance upon the affidavit of debt is supported by Practice Book § 527, which allows a mortgage debt to be proved by the use of an affidavit "where no defense as to the amount of the mortgage debt is interposed." It is clear that the defendant did raise a defense concerning the amount of the mortgage debt before the trial court. The rule, therefore, was inapplicable and the general prohibition against hearsay evidence precluded the use of the affidavit. The plaintiff also contends that the only dispute concerning the debt involved the accuracy of mathematical calculations which the trial court could readily verify. This assertion is not supported by the transcript of evidence, however. The defendant claimed a waiver of the late charges and disputed whether any amounts had been advanced for taxes. Except for the affidavit of debt there is nothing in the record to indicate how the trial court arrived at the figures used in determining the mortgage debt.

There is no substance to the claim of the defendant that the mortgage debt should not have included taxes because they had not been pleaded. In the absence of a request for a more specific statement the complaint need not detail the elements constituting the mortgage debt. See 2 Connecticut Practice Book, Form No. 704.31. In any event, the complaint did allege that taxes were due but had not been paid.

With respect to the claim that there was an insufficient evidentiary basis for the award of attorney's fees of $4800, the defendant conceded at the trial that the sixty hours claimed to have been spent on the case by the plaintiff's counsel was reasonable. The defendant suggested a rate of $40 per hour. The court allowed a rate of $80 per hour after

obtaining some information about the background and experience of the plaintiff's counsel. At trial the defendant raised no objection to the court's proceeding to determine the rate of compensation in the absence of expert testimony about the subject and even suggested a fee. In any event, courts have a general knowledge of what would be reasonable compensation for attorneys and may rely upon such knowledge even where expert testimony is presented. *Taft* v. *Valley Oil Co.,* 126 Conn. 154, 161, 9 A.2d 822 (1939); *Gruskay* v. *Simenauskas,* 107 Conn. 380, 387, 140 A. 724 (1928).

The defendant claims that the clerk taxed costs after the entry of the foreclosure judgment without any notice to him as required by Practice Book § 412.[3] The record before us contains nothing regarding the taxation of costs. It does not appear that the defendant has attempted to appeal to the court or a judge thereof regarding the taxation of costs as provided in the rule. Under these circumstances we cannot consider this claim of error.

In claiming that the finding of the value of the property was not supported by the evidence, the defendant's argument, to the extent that it is not merely an attempt to retry the issue, seems to be based on the fact that the appraiser who testified for the plaintiff made some statements which were hearsay. It appears that several of these were stricken at the defendant's request. The defend-

---

[3] Practice Book § 412 provides as follows: "Bills of costs in civil cases may be taxed by the clerk or assistant clerk, but reasonable notice shall be given to the adverse party, or his attorney, to be present at the taxation, if the appearance of such party be entered on the docket. Either party may appeal from such taxation to the court, if in session; otherwise, to any judge thereof."

ant's brief does not comply with the requirements of Practice Book § 3060F (c) (3) for the presentation of any specific ruling of the trial court which might have been claimed as error. The details of the appraisal given by the plaintiff's witness indicate that it was based upon the estimated reasonable rental income for the apartments of the building in their observed inferior condition and not upon any information received concerning the actual rents as claimed by the defendant. The trial judge visited the building and filed a detailed memorandum describing its many deficiencies. The finding of value is substantially higher than that given by either of the plaintiff's two appraisers.

The defendant's claim that our strict foreclosure procedure is unconstitutional was never raised in the trial court. He contends that the system encourages fraudulent appraisals because no standards have been established by statute or otherwise for making valuations of properties under foreclosure. Since this claim was not raised before the appeal was taken, there is nothing in the record which would enable us to consider these issues. The general rule against considering claims not raised at trial, Practice Book § 3063, applies also to constitutional issues. *Mechanics Savings Bank* v. *Tucker*, 178 Conn. 640, 425 A.2d 124 (1979); *New Haven Savings Bank* v. *Valley Investors*, 174 Conn. 77, 84, 384 A.2d 321 (1977). "Only in most exceptional circumstances can and will this court consider a claim, constitutional or otherwise, that has not been raised and decided in the trial court." *State* v. *Evans*, 165 Conn. 61, 69, 327 A.2d 576 (1973). The defendant has presented nothing to bring himself within any exception to this rule. Id., 69–70.

## II

In attempting to overturn the two findings of contempt made against him for interfering with the receiver appointed by the court, the defendant first has attacked the constitutionality of Practice Book §§ 506-510, which provide for the appointment of rent receivers. The grounds asserted are (1) that these rules modify substantive rights and, therefore, exceed the authority of the court to adopt rules regulating procedure; (2) that the rules contain no standards for the determination of whether a receiver should be appointed; (3) that the procedures for appointing rent receivers under the rules do not comply with the requirements of due process because of the inadequacy of the hearing which is permitted, the inclusion of rentals for personal property in the receivership order, the reliance upon hearsay statements of lawyers during the proceedings, and the lack of any protection of the interest of the debtor. No transcript of the receivership proceedings has been filed, as would be necessary for a proper consideration of these claims. Practice Book § 3060V. The record before us contains only the application for a receiver of rents, a written objection filed by the defendant raising no claim of unconstitutionality, and an order of November 14, 1978, appointing a receiver, which was never effectuated because the corporation named as receiver refused the appointment. It appears from a motion for contempt which is in the record that another receiver was appointed on January 8, 1979. Since we are unable to learn what transpired at either proceeding, we cannot tell whether the defendant raised any of his present claims before the trial court or how those various constitutional

claims are related to those proceedings. In challenging the constitutionality of any enactment a party must demonstrate its adverse impact upon his own constitutionally protected rights. *Kellems* v. *Brown,* 163 Conn. 478, 483, 313 A.2d 53 (1972), appeal dismissed, 409 U.S. 1099, 93 S. Ct. 911, 34 L. Ed. 2d 678 (1973). Without a proper record we are unable to consider these claims of the defendant concerning the constitutionality of our procedure for appointing receivers of rents.

The defendant was found in contempt on two occasions as a result of his actions in renting apartments in the building under foreclosure and in collecting rental payments from tenants after the appointment of a rent receiver on January 8, 1979. In conjunction with the appointment of the receiver the court had ordered the defendant not to collect any such payments for any reason whatsoever.

At a hearing on March 15, 1979, the defendant was found in contempt for having disobeyed the order prohibiting him from collecting money from the tenants. The court ordered the defendant under penalty of incarceration to pay the receiver the sum of $58.95, being the balance of the money which he had received from the tenants but had not turned over to the receiver prior to the hearing. It appears that the defendant soon after the conclusion of the hearing did comply with the order by making the payment as ordered. The court also imposed a fine of $100 on the defendant by virtue of the contempt, ordering that it be paid to the clerk.

On June 27, 1979, another motion for contempt was heard and the defendant was again found in contempt for having collected rental payments and was ordered to pay those amounts to the receiver

under penalty of incarceration. In addition, the sum of $1500 was added to the mortgage debt for attorney's fees incurred in the contempt proceedings.

The defendant claims that the judgments of contempt in both instances are defective for failure of the judgment file to recite the facts upon which the conclusion of contempt was based. *State* v. *Jackson,* 147 Conn. 167, 170, 158 A.2d 166 (1960); *Goodhart* v. *State,* 84 Conn. 60, 94, 78 A. 853 (1911). This requirement pertains only to criminal contempts adjudicated summarily, however. Id.; Practice Book § 988. It is clear that, except for the imposition of the $100 fine, the contempt proceedings against the defendant were civil in nature and were based upon his actions outside the presence of the court.

The defendant also maintains that he should not have been found in contempt because the orders which he was charged with disobeying had been stayed by virtue of the appeal he filed on April 2, 1979. Practice Book § 3065. This appeal, however, was from the judgment of foreclosure and, apparently,[4] was from the first finding of contempt and some further orders restraining the defendant from interfering with the receivership. It was not until December 28, 1979, when the defendant filed a statement of the issues on the appeal, that any claim was made with respect to the appointment of the

---

[4] The defendant's appeal was taken "from Memorandum of Decision dated 3-19-79 from order dated 3-8-79." The "3-8-79" date corresponds with the date on which the foreclosure judgment was entered, although the judgment file is incorrectly dated March 7, 1979. We are unable to find anything in the record corresponding to the "3-19-79" reference, but it appears from the plaintiff's brief and the proceedings relating to the second finding of contempt that the defendant did appeal from the first contempt order filed on March 21, 1979.

receiver or the order restraining the defendant from collecting rental payments issued at the same time. Since the appointment of the receiver on January 8, 1979, and the collateral orders restraining the defendant from collecting rents had not been challenged at the time the contemptuous acts of the defendant occurred, his claim that he was not bound by these orders is of no merit. Both findings of contempt were grounded upon the defendant's wrongful interference with the receiver. The supplemental order of March 21, 1979, which may have been suspended by the appeal taken therefrom, merely reiterated and clarified the previous order of appointment. The evidence presented at both hearings would adequately support the findings of contempt based upon the January 8, 1979 orders. The defendant does not contend otherwise.

The fine which was imposed upon the defendant, as distinguished from the order requiring him to disgorge the funds he had wrongfully collected from the tenants, was a punishment imposed for a criminal contempt. "In civil contempt the fine must be conditional and coercive and may not be absolute." *McTigue* v. *New London Education Assn.*, 164 Conn. 348, 353, 321 A.2d 462 (1973); *Pinfield Co.* v. *S.E.C.*, 330 U.S. 585, 595, 67 S. Ct. 918, 91 L. Ed 1117 (1947). Although the defendant has not raised the point, a criminal contempt may not be punished summarily unless the conduct constituting the contempt was committed in the actual presence of the court and such punishment is necessary to maintain order in the courtroom. Practice Book § 988. Where the contemptuous conduct occurs outside the presence of the court it must be presented as a criminal contempt by means of an information. Practice Book § 991. It is clear that the conduct of

the defendant which was the basis for imposing the fine took place outside the presence of the court and was not punishable as a criminal contempt except by following the procedure set forth in Practice Book § 991.

On the same day that he filed his appeal from the foreclosure judgment and from the first contempt finding the defendant also filed a "motion for new trial before unbiased judge" with an affidavit reciting ten grounds for disqualification of the trial judge. The motion was denied. Numerous grounds for disqualification were cited, none of which suggest any personal bias. All of the grounds set forth involve rulings of the court adverse to the defendant, most of which we have already considered as claims of error. Some reference is made to a separate foreclosure proceeding which we cannot review because of the lack of any transcript or record. Because of the gravity of an accusation of prejudice, we have, nevertheless, reviewed the entire record and we can find no reason for the charge made by the defendant other than the normal dissatisfaction of a disgruntled litigant.

There is no error except for the imposition of the fine upon the defendant and the determination of the amount of the debt. The fine and the finding of contempt related thereto are ordered to be vacated and the case is remanded for the purpose of ascertaining the amount of the debt[5] and to set new law days.

In this opinion the other judges concurred.

---

[5] There would be no need for a proceeding to ascertain the amount of the debt if the plaintiff were to accept the amount admitted by the defendant, $132,832.