## Connecticut National Bank *v.*
## N. E. Owen II, Inc., et al.
### (8372)

Dupont, C. J., Lavery and Landau, Js.

Argued May 1—decision released July 31, 1990

*James M. Nugent,* for the appellants (defendants).

*Stephen W. Aronson,* with whom, on the brief, was *Marc S. Edrich,* for the appellee (plaintiff).

Landau, J. The defendants[1] appeal from the judgment of strict foreclosure rendered by the trial court

---

[1] The defendants are the named defendant, Nicholas E. Owen II, Richard Owen, Joseph Owen and Edmond Owen, Sr. The named defendant exe-

for the plaintiff Connecticut National Bank (CNB). The defendants claim that the trial court (1) incorrectly determined the amount of the debt, (2) improperly denied their motion to open the judgment of strict foreclosure, and (3) awarded an incorrect amount of attorney's fees to CNB. We affirm the trial court's judgment.

The following facts are relevant to this appeal. On October 14, 1987, CNB commenced an action to foreclose a mortgage granted by the named defendant on certain real property to secure a $997,919.67 variable rate promissory note.[2] The defendants were defaulted for failing to disclose a defense.

On July 17, 1989, CNB's motion for judgment of strict foreclosure was heard. At that hearing, the bank submitted an affidavit of debt to the court stating that the amount of the defendants' debt was $1,268,074. This amount included the entire face value of the note, as there had been no principal repayments, as well as accrued interest, late charges and an appraisal fee.[3] The affidavit of debt listed accrued interest as a single lump sum amount of $233,306.41, and contained no supplemental information showing the various interest rates that were in effect during the life of the loan, and the time periods for which those rates were applied

cuted a mortgage, which is the subject of the present foreclosure, to secure a note. The remaining defendants executed certain guaranty agreements and were sued by CNB in their capacity as guarantors of the note.

[2] CNB also sought to recover against the various guarantors of the note. See footnote 1, supra.

[3] We note that the judgment file states:

"The Court . . . finds . . . the sum of $1,285,574.00, which sum includes an attorney's fee of $17,500.00, is due the plaintiff on the debt . . . and that the plaintiff, as items of cost, is entitled to an appraisal fee of $1,300.00 . . . ." The appraisal fee apparently was awarded to the plaintiff twice. Because the defendants did not raise any such claim before this court, and because we can make no definitive determination as to this issue, we will not disturb the trial court's finding.

against the outstanding principal. The note provided for interest to be payable monthly at a rate of 2 percent over CNB's base rate as well as late charges in the event of delinquent payments.

The defendants opposed the submission of the bank's affidavit of debt because they did not receive any documentation verifying that the interest rates actually changed on the dates claimed by the bank.[4] The defendants indicated, however, that a hearing on this matter was unnecessary.[5] The defendants instead stipulated that they would consent to a finding of the amount of the debt stated in the affidavit, provided that CNB would timely provide them with the rate change documentation. On the basis of the parties' stipulation and the affidavit of debt, the trial court found the amount of the debt to be that stated in the affidavit, namely, $1,268,074.

CNB also requested an award of $25,000 as reasonable attorney's fees. In support of its request, the bank submitted an affidavit of attorney's fees and itemized billing statements. Further, CNB explained to the court the history of the loan and its repeated attempts to refinance this and other Owen family loans. The defendants, while not objecting to an award of attorney's fees, argued that the amount should be "substantially less"

---

[4] Defendants' Counsel: "For the record, all I'm looking for is some kind of notification within the bank, showing that the rates changed on particular dates. And that's it. And it's fine and well for him to give me a computer printout, saying this is the computer. It still doesn't answer my question. . . . [T]he bank is required to have a printout or a writing, indicating to all of its customers as to the change of rates at a particular time. And if that documentation, which is maybe a dozen or so of those, are provided, then we don't have to have a hearing."

See also footnote 5, infra.

[5] Defendants' Counsel: "I need something, some documentation as to the fact that these rates changed on the dates they claim they've been changed. That's it. *I don't have to hear anyone testify.* All he has to do is furnish me with internal memos or whatever they do, telling me that the rates changed. *I don't have to have a hearing."* (Emphasis added.)

than that requested. The court awarded reasonable attorney's fees in the amount of $17,500, and thereafter granted CNB's motion for judgment of strict foreclosure.

Subsequent to this hearing, CNB provided the defendants with documentation that showed the specific time periods for which the various rates of interest were in effect, but did not provide the defendants with copies of internal bank memoranda showing the authorization for the interest rate changes.

On August 21, 1989, the defendants' motion to open the judgment was heard. The defendants asserted that the judgment of strict foreclosure should be opened because CNB failed to provide them with the agreed upon documentation. CNB's counsel represented to the court that the requested information concerning authorizations does not exist, and submitted an affidavit prepared by a bank officer to that effect.[6] The court denied the defendant's motion. This appeal followed.

I

The defendants first claim that the trial court incorrectly calculated the plaintiff's debt. Relying on *Burritt Mutual Savings Bank of New Britain* v. *Tucker,*

---

[6] Plaintiff's Counsel: "Your Honor, as I understand the stipulation was that we were to provide any hard document as to the interest rate changes. That's what they were requesting—whether or not the rates had changed as they said, and there is no such documentation. We live in a computer age. These things are done by computer. There is not a hard document that's produced every time the base interest rate changes.

"We did send to counsel a printout of the change [of] the document and they have got that document which we submit. That document which we submitted complies with what the court ordered as documentation.

"I handed counsel an affidavit, and I'll submit one to Your Honor, from the office in the bank that sets the interest rate changes which basically says what I have just told you, which is that there is no hard document; it is done by computer and by telephone calls within the banks."

183 Conn. 369, 439 A.2d 396 (1981), the defendants contend that the court should not have relied on the affidavit of debt in finding the amount of the debt once they had raised a defense as to that amount. We disagree.

It is true that the plaintiff has the burden of proof to establish any allegations that are denied by the defendant. *Streicher* v. *Resch,* 20 Conn. App. 714, 716, 570 A.2d 230 (1990). It is also true that in a mortgage foreclosure action, a fundamental allegation that must be proved by the plaintiff is the amount of the debt. See D. Caron, Connecticut Foreclosures (2d Ed.) § 5.02A2. A hearing to present evidence on the amount of the debt may not be required, however, if a summary procedure is employed pursuant to Practice Book § 527.[7] Under this rule, the plaintiff mortgagee need not present witnesses to testify as the amount of the debt, but may instead submit certain documents to the court, including the original note and mortgage together with an affidavit stating the amount due. Significantly, § 527 can be utilized by the plaintiff mortgagee only "where no defense as to the amount of the mortgage debt is interposed" by the defendant mortgagor. See footnote 7, infra.

A defense is "[t]hat which is offered and alleged by a party proceeded against in an action or suit, as a reason in law or fact why the plaintiff should not recover or establish what he seeks. . . ." Black's Law Dictionary (5th Ed.). In a mortgage foreclosure action, a defense to the amount of the debt must be based on

[7] Practice Book § 527 provides that "[i]n any action to foreclose a mortgage *where no defense as to the amount of the mortgage debt is interposed,* such debt may be proved by presenting to the court the original note and mortgage, together with the affidavit of the plaintiff or other person familiar with the indebtedness, stating what amount, including interest to the date of the hearing, is due, and that there is no setoff or counterclaim thereto." (Emphasis added.)

some articulated legal reason or fact. See, e.g., *Burritt Mutual Savings Bank of New Britain* v. *Tucker,* supra, 374–75 (where defendant claimed that mortgage debt was inaccurately computed, that the bank waived late charges and that certain amounts had been advanced for taxes).

We conclude that a mere claim of insufficient knowledge as to the correctness of the amount stated in the affidavit of debt is not a defense for purposes of § 527. To allow an insufficient knowledge claim to rise to the level of a defense would remove any incentive for the mortgagor to gather facts during the discovery process or to keep records. A defendant mortgagor should not be able to use a hearing on a motion for judgment of foreclosure to accomplish what he should have done previously through interrogatories or a deposition.

Further, it does not escape appellate scrutiny that after the plaintiff filed a demand for disclosure of defenses, the defendants, on January 19, 1988, were defaulted for failure to disclose. We can discern no reason for allowing the defendants to claim, some eighteen months later, in a hearing on the motion for judgment of foreclosure that they do in fact have a defense, especially when their claim is merely that they have insufficient information.

In addition, when a defendant mortgagor stipulates to the amount of the indebtedness, he is ordinarily barred from later contesting it. A stipulation is generally dispositive of that issue. Cf. *Westco Corporation* v. *AMK Construction Co.,* 1 Conn. App. 521, 523, 473 A.2d 340, cert. denied, 193 Conn. 803, 475 A.2d 1104 (1984) (issue concerning the interpretation of an agreement completely resolved by factual stipulation of the parties). A stipulation is a contract, and, as such, the construction of that contract is controlled by the parties' intent. *Albert Mendel & Sons, Inc.* v. *Krough,* 4

Conn. App. 117, 122–23, 503 A.2d 624 (1985). Contractual intent is a question of fact and our review is limited to whether the trial court's finding of intent was clearly erroneous. Id., 123–24.

At the July 17 hearing, an exchange between counsel occurred before the court in which the defendants consented to the amount of debt as stated in the affidavit subject to the plaintiff's providing supporting documentation.[8] In view of the clear and unambiguous language of this parol stipulation, and the subsequent explanation to the court by the plaintiff's counsel on August 21 that the information requested by the defendants was nonexistent, the court was correct in concluding that the defendants were bound by the stipulation.

Finally, the defendants' reliance on *Burritt Mutual Savings Bank of New Britain* v. *Tucker,* supra, is misplaced. In *Burritt,* because the defendant had clearly interposed a defense concerning the amount of the mortgage debt, the court improperly used the § 527 summary procedure in relying on the affidavit of debt. Here, the defendants have failed to articulate any

---

[8] "[The Court]: Okay. Where do we stand, gentlemen?

"[Plaintiff's Counsel]: Where we stand, Your Honor, is Attorney Charmoy has indicated that he would agree to allow a finding of the debt today, subject to my providing him with the documentation to support that within, what, two weeks?

"[Defendants' Counsel]: I would think two weeks. You'll send a copy to the court and a copy to me?

"[Plaintiff's Counsel]: Yes.

"[Defendants' Counsel]: All right. And if.I don't get the documentation, then I'll have to move to reopen.

"[The Court]: So the debt is as reflected in the affidavit which is one million, two hundred sixty-eight thousand, seventy-four dollars."

"[Defendants' Counsel]: Provided that, again, that documentation is not received from two weeks from today, that the court reopen the judgment.

"[Plaintiff's Counsel]: We would have no objections to a motion to reopen on that basis.

"[The Court]: All right. What else do we have to address at this point?"

defense to the indebtedness. In sum, because the defendants failed to interpose a defense to the foreclosure action, the court properly used the summary procedure of § 527 to rely upon CNB's affidavit of debt, and, further, we see no reason to allow the defendants to avoid their stipulation as to the debt.

## II

The defendants' next claim is that the court improperly denied their motion to open the judgment. They argue that, because the subject documentation was not provided, there is reasonable cause for opening the judgment and a good defense exists as to the accuracy and determination of the debt. We disagree.

Under General Statutes § 49-15,[9] a motion to open judgment of strict foreclosure is addressed to the discretion of the trial court. *Melillo* v. *Spiro*, 187 Conn. 333, 334, 445 A.2d 921 (1982). Unless the movant demonstrates an abuse of discretion or some error of law, the denial of the motion must stand. Id.

The defendants here have failed to show that the trial court abused its discretion or committed an error of law. The defendants never asserted a defense with regard to the debt prior to the rendering of the judgment of strict foreclosure. Therefore, any claim that they had a good defense to open that judgment and challenge the amount of the debt is equally without merit.

## III

The defendants' final claim is that the court awarded an incorrect amount of attorney's fees to the plaintiff.

---

[9] General Statutes § 49-15 provides in pertinent part that "[a]ny judgment foreclosing the title to real estate by strict foreclosure may, at the discretion of the court rendering the same, upon the written motion of any person having an interest therein, and for cause shown, be opened and modified, notwithstanding the limitation imposed by section 52-212a, upon such terms as to costs as the court deems reasonable . . . ."

They claim that there was an insufficient evidentiary foundation for the $17,500 award of attorney's fees because there was no basis on which the total attorney's fees incurred by CNB with regard to the entire Owen lending relationship could be allocated to the mortgage note that is the subject of the present foreclosure action. We disagree.

CNB submitted a detailed itemized twenty-five page bill accounting for $47,265 that particularized the time and nature of legal services rendered by its counsel in connection with all of the Owen family loans, the combined total of which exceeded two million dollars. Accompanying this accounting was a statement prepared by counsel that attributed $25,000 to the note that is the subject of the foreclosure action. After a hearing on the attorney's fees, the court reduced that amount by $7500, allowing $17,500 as a reasonable fee. The note executed by the named defendant stated that it was responsible for "all costs, expenses and attorney's fees incurred in any action to collect this Note or to foreclose any mortgage, or other agreement securing this Note or in protecting or sustaining the lien of such mortgage, or other agreement or in any litigation or controversy arising from or connected with said mortgage, or other agreement of this Note."

Where a contract provides for the payment of attorney's fees by a defaulting party, those fees are recoverable solely as a contract right. *Litton Industries Credit Corporation* v. *Catanuto,* 175 Conn. 69, 76, 394 A.2d 191 (1978). Therefore, the language of the note governs the award of fees, and we need not consider General Statutes § 52-249 (allowance of reasonable attorney's fees in a foreclosure action). Such "attorney's fees incurred" language has been interpreted by our Supreme Court in *Storm Associates, Inc.* v. *Baumgold,* 186 Conn. 237, 245–46, 440 A.2d 306 (1982), as permitting recovery "upon the presentation of an attor-

ney's bill, so long as that bill is not unreasonable upon its face and has not been shown to be unreasonable by countervailing evidence or by the exercise of the trier's own expert judgment." See also *Crest Plumbing & Heating Co.* v. *DiLoreto,* 12 Conn. App. 468, 480–81, 531 A.2d 177 (1987).

While the defendants excepted to the court's award of $17,500, they never asked the court for an articulation of that award. There is no dispute regarding the documentation of the entire bill. Rather, the defendants contend that the allocation of that total amount to the subject note was arbitrary. Given the sparse record regarding the court's decision to award $17,500, and the fact that this note is approximately one half of the total outstanding Owen family loans, we cannot say, in light of *Storm Associates, Inc.,* that the court abused its discretion in awarding this amount. See *Hoenig* v. *Lubetkin,* 137 Conn. 516, 525, 79 A.2d 278 (1951).

The judgment is affirmed.

In this opinion the other judges concurred.