[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDA OF DECISION ON MOTIONS FOR DEFICIENCY JUDGMENT
Suffield Bank (the Bank) filed these actions in April 1990 to foreclose mortgages on property in Farmington, Connecticut securing commercial loans in the amount of $3.9 million (Docket No. CV 900376564) and $500,000 (Docket No. CV 0376565) made by the Bank to defendants, William W. Berman, James J. Luzzi, Thomas E. Kohanski (collectively referred to as the Berman defendants), and William L. Wollenberg, in May 1987.
On November 9, 1990 this court (Maloney, J.) entered judgments of strict foreclosure in favor of the bank, found the debts to be $4,512,400.74 and $584,881.96 respectively, and set law days for December 12, 1990.
The Berman defendants appealed from the judgments of strict foreclosure. On July 30, 1991, the appeal was decided against the Berman defendants and the cases were remanded with instructions to set new law days. See Suffield Bank v. William Berman, 25 Conn. App. 369, 594 A.2d 493 (1991). The Berman defendants thereafter filed a Petition For Certification to appeal the decision to the Connecticut Supreme Court. That Petition was denied on September 19, 1991.
On September 6, 1991 this court entered an order declaring the Bank insolvent and appointing the Federal Deposit Insurance Corporation (FDIC) as its receiver. On January 6, 1992 this court (Satter, J.) set new law days of March 16, 1992 for the property securing the larger note and June 16, 1992 for he property securing the smaller note. At that time the court ordered that the obligation of the defendant William Wollenberg to pay interest on the debts would terminate as of January 27, 1992. The properties were not then redeemed, and the title transferred to the FDIC on March 17, 1992 and June 17, 1992 respectively. Thereafter the FDIC filed Motions for Deficiency Judgment in both cases. CT Page 626
All of the defendants have objected to the Motion for Deficiency Judgment on the following grounds: 1) The defendants have had no meaningful opportunity to challenge the amount of the debt at a meaningful time, and; 2) equity should deny the deficiency judgment on "general principles", and on the specific doctrines of unjust enrichment and equitable estoppel, because the Bank took actions to maximize the amount of deficiency and failed to take actions to minimize the amount of the deficiency.
The defendant William L. Wollenberg opposes the entry of the deficiency judgment on the following additional grounds: 1) the Motion for Deficiency Judgment was untimely filed against him; 2) Wollenberg's liability on the deficiency judgment is limited to $75,000 as reflected in a settlement agreement entered into with the Bank and; 3) the obligation of the defendant Wollenberg on the notes were already discharged at the time the FDIC assumed receivership of the Bank by virtue of the settlement agreement.
The defendants oppose the granting of a deficiency judgment on the ground that they have not had a meaningful opportunity to challenge the amount of the debt at a meaningful time and, therefore, the granting of a Motion for Deficiency Judgment would violate their due process rights. The factual basis of this argument is identical to that unsuccessfully raised by the Berman defendants in their appeal of the entry of the judgment of strict foreclosure. See Suffield Bank v. William W. Berman, 25 Conn. App. 369,594 A.2d 493 (1991).
In that appeal the Berman defendants claimed that the trial court improperly prevented them from contesting the amount of the mortgage debt at the hearing on the Motion for Judgment of Strict Foreclosure. The Appellate Court found that all defendants in the action, including the Berman defendants, were defaulted for failure to disclose a defense. The plaintiff filed a Motion for Judgment of Strict Foreclosure. Immediately prior to the hearing on that motion, the Berman defendants indicated that they intended to object to the plaintiff's affidavit of debt on the basis that their obligation to pay interest was discharged because the Bank failed to accept the offer of one of the equity owners to convey the mortgaged property to the Bank to satisfy the CT Page 627 mortgage debt. The plaintiff objected to the evidence proffered by the Berman defendants in support of that defense. The trial court refused to admit the evidence and rendered judgment based on the affidavit of debt. The Berman defendants thereafter appealed. The Appellate Court affirmed the decision of the trial court. It held that the defendants' failure to disclose a defense in a timely manner barred them from later contesting liability at the foreclosure hearing.
In the proceedings before the Appellate Court, and in this case, the Berman defendants relied on the case of Burritt Mutual Savings Bank of New Britain v. Tucker, 183 Conn. 369,439 A.2d 396 (1981). In Burritt the Supreme Court held that where the defendant challenged the amount of principal, interest, taxes, and late charges shown on a affidavit of debt presented at a hearing on a judgment of strict foreclosure, the plaintiff was required to offer evidence concerning those amounts and could not rely on the affidavit of debt to establish the amount of its debt.
The Appellate Court distinguished Burritt from the present case. It stated that the issue in Burritt was the accuracy of the calculations in the affidavit of debt, whereas here, the defendants contested their liability to pay a certain portion of the debt, specifically, interest accruing after one of the defendants offered to return the mortgaged properties to the Bank.
Notwithstanding the ruling of the Appellate Court, the defendants continue to maintain that their challenge is not a challenge to liability. Therefore, they claim that the challenge they wish to raise is a challenge to the amount of interest as recorded on the face of the affidavit of debt. filed with the court and before that time any challenge to those figures would have been unripe.
This court finds that the defendants could have interposed the defense at issue without knowledge of the exact figures which would be contained in the affidavit of debt, either by means of an answer and special defenses or by a disclosure of defense, which denied liability for interest accruing after the alleged offer to return the property to the Bank. Furthermore, this court is bound by the holding of the Appellate Court on this issue. CT Page 628
The defendants were not prohibited from challenging the amount of the debt. As the Appellate Court has ruled, the defendants had a means of challenging the amount of the debt, but the defendants did not follow the procedure which would have enabled them to do so. Therefore, there was no deprivation of state or federal constitutional guarantees of due process.
The Berman defendants also claim that the court should use its equitable powers to deny the Motion for Deficiency Judgment. The argument is based on the claim that the Bank failed to mitigate its damages when it failed to take any action with respect to a post judgment offer to purchase the mortgaged property. The Bank failed to act in good faith, the defendants claim, in taking actions to influence the appraiser who performed an appraisal of the mortgaged property for foreclosure purposes.
The procedure set forth in Connecticut General Statutes 49-14 is the only method of satisfying a mortgage note when the security is inadequate to make a foreclosing plaintiff whole. Eichmann v. J J Building Co., 216 Conn. 443,582 A.2d 182, 185 (1990). The statute provides for a hearing at which the court shall consider evidence of the valuation of the mortgaged property. Thus, the only matter to be addressed in a hearing on a Motion for Deficiency Judgment under Connecticut General Statutes 49-14 is the value of the foreclosed property on the date title vested in the mortgagee. Eichmann v. J J Building Co., 216 Conn. at 449. A foreclosure action is equitable in nature. Boretz v. Segor,124 Conn. 320, 324, 199 A. 548 (1938). A trial court may withhold foreclosure, or reduce the amount of stated indebtedness in the event it finds that the plaintiff's conduct was inequitable, Lettieri v. American Savings Bank,182 Conn. 1, 12, 437 A.2d 822 (1980); Hamm v. Taylor,180 Conn. 491, 497, 429 A.2d 946 (1980).
It is possible that the court could deny a deficiency judgment based on the plaintiff's inequitable conduct. However, in this case the court finds that there is insufficient evidence of the Bank's inequitable conduct to warrant the drastic consequence of the denial of the Motion for Deficiency Judgment. The defendants have presented no competent evidence concerning the alleged post judgment offer to purchase the mortgaged property. While the defendants did CT Page 629 introduce evidence of conduct on the part of certain Bank officers, which could be characterized as an attempt to influence the appraisal submitted to the court for purpose of judgment of strict foreclosure, the defendants have not introduced evidence that the FDIC interfered with the appraisal which was done for the purposes of the Motion for Deficiency Judgment. The valuation of the properties found by the court at the time the judgment of strict foreclosure entered is not relevant to the court's determination of the fair market value of the property for a purpose of deficiency judgment. Eichmann v. J J Building Co., 216 Conn. 443,582 A.2d 182 (1990).
The defendant Wollenberg claims that the plaintiff's Motion for Deficiency Judgment was not timely filed as to him because he was not a party to the appeal by the Berman defendants, and, therefore, the original law day of December 12, 1990 remained effective as to him.
Connecticut General Statutes 49-14 provides that "at any time within 30 days after the time limited for redemption has expired any party to a mortgage foreclosure may file a motion seeking deficiency judgment." The value of the premises on the date that title becomes vested in the mortgagee determines whether the mortgagee is entitled to a deficiency judgment. DiDiego v. Zarro, 19 Conn. App. 291,562 A.2d 555 (1989).
Law days established in a foreclosure judgment are ineffective while an appeal is pending. Farmers and Mechanics Savings Bank v. Sullivan, 216 Conn. 341, 347,579 A.2d 1054 (1990). Upon the filing of the Berman defendant's appeal all further proceedings were stayed, precluding passage of title on any of the law days provided for in the judgment. Milford Trust Co. v. Greenberg, 137 Conn. 277, 278, 77 A.2d 80
(1950).
The filing of an appeal by any defendant stays all law days. Thus, the December 12, 1990 law day, which was originally set prior to the appeal, was not effective to vest title in the plaintiff. The plaintiff was not required to file a Motion for Deficiency Judgment as to any defendant within 30 days of that date. In addition, the defendant Wollenberg affirmatively requested a new law day by moving for new law days and by filing a Proposed Order of Law Days in CT Page 630 this action dated September 20, 1991. Based on such action it is reasonable to infer that Wollenberg recognized that the filing of the appeal by the Berman defendants had rendered the previously set law days ineffective and that he, as well as the Berman defendants, was entitled to a new law day. After the appeals were decided in both cases the court set new law days. The FDIC filed Motions for Deficiency Judgment within 30 days of those dates. Therefore the Motions for Deficiency Judgment were timely filed.
The defendant Wollenberg also claims that the Deficiency Judgment against him should be limited to the amount of $75,000 in accordance with an agreement between Wollenberg and the Bank. The agreement was made at a meeting between Wollenberg, Bank officials and the Bank's attorney shortly before April 15, 1991. The agreement was summarized in a letter from the Bank's attorney to Wollenberg's attorney dated August 15, 1991, which stated in relevant part:
 This will confirm the agreement reached by Bill Wollenberg and Suffield Bank in connection with the action filed by Suffield Bank against Messrs. Wollenberg, Berman, Kohanski and Luzzi. Mr. Wollenberg has agreed not to object to the entry of judgment in favor of the Bank, not to exercise any appeal rights and to pay the bank $75,000. In consideration, the Bank will release Mr. Wollenberg from further liability of the underlying note.
 I have asked Dean Baker of my office to determine the form our agreement should take. If you have any thoughts, please call me.
At the hearing on the Motion for Deficiency Judgment, Wollenberg testified that he was and is ready, willing and able to perform the agreement by tendering the money and accepting a release. The plaintiff does not contest the fact that the agreement is a valid and enforceable settlement contract between its predecessor Suffield Bank and Wollenberg. However, the plaintiff contends that the letter and all special defenses based thereon are unenforceable as to the FDIC unless Wollenberg can establish that the letter meets CT Page 631 the requirements of 12 U.S.C. § 1823(e) and the D'Oench Dhume doctrine.
12 U.S.C. § 1823(e) provides:
 (e) Agreements Against Interests of Corporation
 No agreement which tends to diminish or defeat the interest of the corporation [FDIC] in any asset acquired by it under this section or 1821 of this title, either as security for a loan or by purchase or as receiver of any insured depository institution, shall be valid against the corporation [FDIC] unless such agreement —
(1) is in writing,
 (2) was executed by the depository institution and any person claiming and adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,
 (3) was approved by the Board of Directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and
 (4) has been continuously, from the time of its execution, an official record of the depository institution.
If an agreement fails to meet any one of 1823(e)'s requirements it is not valid against the FDIC. Langley v. FDIC, 44 U.S. 86, 108, S.Ct. 396 (1987); FDIC v. Mannett, CT Page 632922 F.2d 486, 488 (8th Cir. 1991); FDIC v. Krause,904 F.2d 463 (8th Cir. 1990); FDIC v. Marley, 867 F.2d 1382 (11th Cir.) Cert. den., 110 S.Ct. 75 (1988). Proof that the Bank and Wollenberg entered into an agreement is insufficient to establish that such agreement is enforceable against the FDIC.
In FDIC v. Krause, supra, the Eighth Circuit recognized that although the result might appear harsh, each element of 1823(e) must be established to enforce an agreement of an insolvent bank against the FDIC. In that case the Krauses executed two promissory notes payable to a bank, and subsequently defaulted in payment. The Krauses and the bank entered into a written settlement agreement, which was executed by the bank's president with full knowledge and approval of the bank's board of directors. The Krauses fully performed under their written settlement agreement, which, under state law constituted an accord and satisfaction. Id. at 464. The bank was later declared insolvent and its assets, including the notes, were transferred to the FDIC. When the FDIC sued on the notes, the Krauses claimed the settlement agreement and their performance thereunder was an accord and satisfaction before the bank's insolvency, such that the notes were not "an asset" of the bank that the FDIC had acquired.
The Eighth Circuit upheld summary judgment for the FDIC because the settlement agreement failed to meet all of the requirements of 1823(e). In strictly applying the statute, the Court stated, "It is immaterial whether the bank's board actually approved the settlement if the approval was not reflected in the minutes." Id. at 466. The Court noted that two purposes of 1823(e) were to allow federal and state banking examiners to rely on the bank's records in evaluating the worth of a bank's assets and to insure mature consideration of unusual loan transactions when a bank appears headed for failure. Id. at 465 citing Langley v. FDIC,484 U.S. 86, 91-92, 108 S.Ct. 396, 401, 98 L.Ed.2d 304 (1987).
In this case Wollenberg has failed to introduce any evidence that the settlement agreement was approved by either the Bank's board of directors or a loan committee, that the minutes of either the Bank's board of directors or loan committee reflect such approval, or that the letter was continuously from the time of its execution an official record of the Bank. Because he has failed to introduce evidence that CT Page 63312 U.S.C. § 1832(e) has been complied with, the letter is unenforceable against the FDIC and all defenses based on the letter must fail.
The letter is also unenforceable against the FDIC under the D'Oench Dhume doctrine, which was created as a matter of federal common law by the United States Supreme Court and is often referred to as the common law counterpart to 1823(e). Under D'Oench Dhume, the FDIC is entitled to rely, to the exclusion of any extraneous matters, on the official bank records of the instruments themselves setting forth the rights and obligations of the bank and its borrowers. See D'Oench Dhume Co. v. FDIC, 315 U.S. 447
(1942). Agreements outside of and contradicting the official instruments in the bank's records are invalid under the D'Oench Dhume doctrine because they tend to deceive and are likely to mislead banking regulatory authorities who, in taking over an insolvent financial institution, often must review all its records virtually overnight. Astrup v. Midwest Federal Savings Bank, 886 F.2d 1057, 1058 (8th Cir. 1989); Langley v. FDIC, 108 S.Ct. at 402, D'Oench Dhume Co. v. FDIC, 315 U.S. at 460. Wollenberg has presented no evidence that the agreement reflected in the letter was ever adopted by the Bank's officials and made part of the sank's official records. Therefore, under D'Oench Dhume it is not enforceable against the FDIC.
12 U.S.C. § 1823(e) and the D'Oench Dhume doctrine bar enforcement of the letter agreement against the FDIC regardless of whether there was a lack of bad faith or intent to defraud in entering the agreement. Langley v. FDIC, 108. S.Ct. at 403; Campbell Leasing Co. Inc. v. FDIC, 901 F.2d 1244
(5th Cir. 1990); Taylor Trust v. FCC Federal Sav. Loan Ass'n, 844 F.2d 337 (6th Cir. 1988). There was no evidence in this case that Wollenberg or Bank officials entered into the agreement reflected by the letter with any bad faith or intent to defraud. On the contrary, the court finds that the Bank and Wollenberg believed that the agreement reflected a fair settlement, which was in the best interest of the parties based on the facts and circumstances known to them at the time of the agreement. Unfortunately, the Bank was declared insolvent and the FDIC became the Bank's receiver. Once that occurred, the requirements of 12 U.S.C. § 1823(e) and the D'Oench Dhume doctrine became effective to bar the enforcement of the agreement against the FDIC, unless the agreement met CT Page 634 the specific requirements of that statute and doctrine. As set forth above the agreement did not meet those requirements.
In the proceeding on a Motion for Deficiency Judgment, the plaintiff has the burden of proving the fair market value of the property as of the date the title vested in it. Eichman v. J J Building Co., 216 Conn. 443, 445,582 A.2d 182 (1990). In finding a value of the property for the purposes of a deficiency judgment the court may accept portions of an appraiser's testimony and reject portions of that testimony. New Haven Savings Bank v. West Haven Development, 190 Conn. 60, 70, 459 A.2d 999 (1983). The court may also refuse to enter a deficiency judgment where it finds that the plaintiff has not met its burden of establishing the value of the property. Eichman, supra, at p. 455.
The plaintiff presented the testimony of an MAI appraiser, Edward F. Heberger, who stated that the fair market value of 1051-1053-1055 Farmington Avenue (hereinafter referred to as 1051 Farmington Avenue) as of March 17, 1992 was $1,900,000. Heberger had previously appraised that property as of May 8, 1990 and found a fair market value of $4,100,000. Soon after the Bank received the May 8, 1990 appraisal it requested Heberger to reconsider his valuation because the Bank believed the fair market value initially found by Mr. Heberger was too high. In response to this request, Heberger informed the Bank in July, 1990 that the "fair value" of the property was $3,300,000. At the hearing on the Motion for Deficiency Judgment Hebeger explained the large difference in the two virtually contemporaneous estimates of value by stating that the second and lower estimate was based on a different definition of value. This court did not consider the May 8, 1990 estimate of value or the July, 1990 estimate of value substantively, but did consider those estimates insofar as they affected the credibility of Mr. Heberger's testimony on the valuation of the property for purposes of deficiency judgment.
At the hearing on the Motion for Deficiency Judgment, the plaintiff introduced a copy of Mr. Heberger's report. The report indicated that the fair market value of the property was based on the cost approach, the income approach, and the comparable sales approach. Heberger's testimony at trial centered around the comparable sales approach. He used five comparable sales in estimating the value of 1051 Farmington CT Page 635 Avenue. Only one comparable sale was of property in Farmington, Connecticut. That property sold for a price of $133 per square foot of building area. Heberger testified that that property was the most comparable to the subject property. He further stated that the area of Farmington in which the comparable sale was located was less desirable than the location of the 1051 Farmington Avenue property.
One of the comparable sales was of property in Bloomfield, Connecticut which sold for the price of $36 per square foot of building area. On cross examination Heberger admitted that the Bloomfield property had been sold by a foreclosing bank. However that information was not evident in the appraisal report. Mr. Heberger admitted that the report should have indicated the post-foreclosure status of the Bloomfield comparable sale because a foreclosed property will generally sell at a much lower price than one that has not been foreclosed. Mr. Heberger's notes showed the Bloomfield comparable sale with an "X" through it, which suggested that the property should have been rejected as a comparable. Mr. Heberger could not explain why the property was not rejected as a comparable.
Two other properties used as comparables were in a Meriden, Connecticut and Wallingford, Connecticut. The property in Meriden sold in February of 1990 for $86 per square foot of building area. The owner planned substantial renovations to the interior of the property. The property in Wallingford sold in January of 1990 for $75 per square foot of building area. This property was also in need of refurbishment. Mr. Heberger admitted that Meriden and Wallingford were less desirable locations than Farmington. He could not explain why neither the Meriden nor the Wallingford comparable sales had been used in the May 1990 appraisal of the 1051 Farmington Avenue property. The last comparable sale relied on by Mr. Heberger was property in Windsor, Connecticut which sold in June of 1991 for a price of $112 per square foot of building area.
Heberger's appraisal report contained a chart, or adjustment grid, with numerical adjustments with categories such as "condition of the building", "conditions of the sale", "location", etc. The ostensible purpose of the adjustment grid was to adjust the sales price of the comparable properties insofar as they related to the subject property. CT Page 636 Mr. Heberger stated that the numerical adjustments did not represent a specific percentage increase or decrease in the valuation of the subject property as compared with the comparable properties. Therefore, although the adjustment grid in the appraisal report appears to objectively adjust the value of the comparable sales to arrive at a comparable value of the subject property, the adjustments were completely subjective.
The comparable sales properties in Meriden and Wallingford, locations admittedly inferior to that of the subject property, sold at $86 and $75 per square foot of building area respectively. Unlike the subject property, the Meriden and Wallingford properties required substantial refurbishment. The subject property was constructed in 1988 and does not require renovations. The comparable sale property which Mr. Heberger admitted was the most comparable to the 1051 Farmington Avenue property sold at a price of $133 per square foot of building area. Nevertheless, Mr. Heberger opined that the value of the subject property was $50 or $55 per square foot building area. The court does not find that the comparable sales data relied on by Mr. Heberger supports that valuation.
The average selling price of the four properties referred to in the appraisal report which were reasonably comparable to the subject property was approximately $100 per square foot of building area. The subject property contains approximately 36,000 square feet of gross building area. Based on the foregoing and on evidence that the commercial real estate market declined between the time of the comparable sales and the vesting of title in the plaintiff, this court finds that the fair market value of 1051-1053-1055 Farmington Avenue as of March 17, 1992 was $3,300,000.
The court finds that Mr. Heberger's valuation of the property at 1067 Farmington Avenue, Farmington was reasonable and, therefore, the fair market value of that property as of June 17, 1992 is found to be $215,000.
The plaintiff claims that the attorneys' fees it incurred in defending against the appeal, pursuing the prejudgment remedy application, preparing for the hearing on the Motion for Deficiency Judgment, and attending the hearing, which took several days, was $63,500. The affidavit of CT Page 637 attorney's fees does not allocate between fees incurred by the plaintiff with respect to defending the appeal and fees incurred in connection with the deficiency judgment. The court has the authority to award attorneys fees incurred in obtaining the deficiency judgment under City Saving Bank of Bridgeport v. Miko, Conn. App. 30, 467 A.2d 929 (1983). However the court does not have authority to award attorneys fees incurred in defending the appeal or in connection with other proceedings which occurred after the entry of the judgment of strict foreclosure. Those fees could have been properly awarded only in the context of the judgment of strict foreclosure. The court awards the plaintiff $30,000 as reasonable attorneys fees in connection with the Motion for Deficiency Judgment.
Deficiency judgments may enter in favor of the plaintiff in amounts consistent with this decision. The plaintiff should submit proposed orders for deficiency judgment setting forth the amounts of the deficiency judgments and the calculations made in reaching those amounts.
By The Court Aurigemma, J.