LEWIS J. BUSCONI ET AL. *v.* RONALD
DIGHELLO ET AL.
(14330)

Dupont, C. J., and Lavery and Landau, Js.

Argued September 14—decision released December 5, 1995

*Bernard Green*, with whom, on the brief, was *Marni Smith Katz*, for the appellants (defendants).

*Todd H. Lampert*, for the appellees (plaintiffs).

DUPONT, C. J. The defendants appeal from the granting of a summary judgment for the plaintiffs in their action to foreclose a judgment lien based on a prior judgment that was obtained in the United States District Court for the District of Connecticut and affirmed in the Court of Appeals for the Second Circuit. The dispositive issue is whether a judgment of a federal court, confirming an arbitration award, may be enforced in a Connecti-

cut state court when neither the federal action to compel arbitration nor the federal action to confirm the arbitrator's award named the owners of the property to be foreclosed as parties or served them with process, but where the arbitration panel found, after the participation by these property owners in the arbitration hearing, that they were alter egos of the named defendant, who was served in the action to confirm, and were therefore all liable to the plaintiffs.

For this court properly to review the state trial court's granting of the motion for summary judgment, which was based principally on the doctrine of collateral estoppel, a review of the facts found and issues resolved in the underlying federal judgment is necessary.

The original dispute between the named plaintiff, Lewis J. Busconi, and the named defendant, Ronald Dighello, arose from a business relationship in which they had agreed to construct condominiums, a golf course and a marina at a cost of $66 million on 165 acres of property located in Milford. Numerous disputes between them soon frustrated these plans.

In October, 1981, Busconi and Lion Construction Company, owned by Busconi, brought an action against Dighello and By-The-Sea, Inc. (By-The-Sea), seeking to compel arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. § 4. In 1982, a federal magistrate granted the relief sought and ordered that the parties settle their disputes through arbitration pursuant to a written contract entered into on April 29, 1981. *Ruling On Objection To Magistrate's Ruling*, Civ. No. N-81-461 (D. Conn. October 5, 1982). On October 5, 1982, the federal District Court sustained the magistrate's decision to order arbitration. After additional motions and appeals, arbitration finally commenced in May, 1984, before a panel of three arbitrators and concluded in January, 1987. A more complete history of the acrimonious past

of the parties is contained in *Dighello* v. *Busconi*, 673 F. Sup. 85 (D. Conn. 1987), aff'd, 849 F.2d 1467 (2d Cir. 1988).

After forty days of comprehensive and lengthy hearings, generating more than thirty-eight volumes of transcripts, more than 300 exhibits and extensive briefs and papers, the arbitration panel unanimously found the named defendants and Luxury Property, Inc. (Luxury), and Brandy Incorporated-Milford (Brandy) liable to the plaintiffs and ordered the payment of monetary damages and other relief to the plaintiffs. The liability of Luxury and Brandy was based on the fact that the arbitration panel had found them to be alter egos of Dighello. All of the individuals and corporations against whom the award ran participated in the hearings before the arbitration panel and were parties in those hearings. At oral argument in this court, the defendants conceded that the arbitration award against Brandy and Luxury was binding.

Before issuing the award, the arbitration panel made a number of findings of fact. The development of the construction project centered around three parcels of land that were either owned or controlled by Dighello through various corporate entities. Parcel A, consisting of eleven acres, contained a golf course, clubhouse, and other improvements. Parcel B, consisting of eighteen and one-half acres and abutting parcel A, was the site of a partially constructed condominium. Parcel C, consisting of thirty-five acres, was totally undeveloped.

In the early 1970s, Dighello began construction on parcel B, which was encumbered by a mortgage. Dighello had defaulted on the mortgage and, as a result, lost the property by way of a foreclosure. Although the mortgagee obtained possession of parcel B, the property was worthless unless used in conjunction with parcel A, which was subject to a separate mortgage provided by a different mortgagee.

When Dighello and Busconi met, Dighello had lost title to parcel B and was in jeopardy of losing parcels A and C. As a result, Dighello and Busconi entered into an agreement in which Busconi would provide the needed funds to reacquire parcel B and to save parcels A and C from foreclosure.

On March 17, 1980, after continued negotiations, Busconi purchased parcel B from the mortgagee for $1.2 million and provided Dighello with $1.15 million to satisfy the debt owed on parcel A. Once the titles to the property were secure, the parties began to implement plans to build 600 condominium units and to maintain a golf course and marina.

By-The-Sea, a defendant named in the original motion to compel arbitration, transferred a portion of parcel C to Busconi, and Busconi transferred title to parcel B to Brandy, a newly formed corporation wholly owned by Dighello. The purpose of this transaction was to secure special building permits, after which the property would be reconveyed to Busconi. Finally, Dighello conveyed parcel A to Luxury, a corporation controlled by Dighello.

Soon after planning and construction began, Dighello and Busconi began to have disputes regarding the finances, management and construction of the project. As a result, work stopped and Busconi moved in federal court to compel arbitration, which was granted.

The arbitration panel stated in its award that the parties were at issue as to the scope of, and the appropriate parties to, the arbitration. The panel found that Luxury, Brandy, Millionaire, Inc. (Millionaire), and Millstone Country Club, Inc. (Millstone), the latter two corporations being owned or controlled by Dighello, in addition to the named defendants, all "either executed or directly benefited from the various agreements," and that Dighello clearly owned, dominated and controlled

all of these corporations. The panel specifically found that Dighello "dealt with and through those various entities as their alter ego, see *Zaist* v. *Olson*, [154 Conn. 563, 573–74, 227 A.2d 552 (1967)]." Accordingly, the panel concluded that all orders entered against Dighello applied equally to By-The-Sea, as well as to Millionaire, Millstone, Luxury and Brandy. The panel awarded specific performance, ordering that Dighello return certain parcels of property to Busconi, create certain easements in Busconi's favor, and execute certain zoning permits and documents to Busconi. The panel also awarded monetary damages of $5,648,677.20 plus supplemental interest, and found that "Busconi [was] entitled to lien any or all of the properties of Dighello or any of his entities, to secure payment of said award."

Pursuant to 9 U.S.C. § 9, Busconi moved to confirm the arbitration award, and Dighello and By-The-Sea filed a motion to vacate the award pursuant to 9 U.S.C. § 10. Dighello and By-The-Sea argued that the arbitration panel decided issues not submitted for resolution, that the panel exceeded their scope by binding nonsignatories of the arbitration order, namely Luxury and Brandy, to the arbitration award, and that the award was incomplete, ambiguous, and contradictory. Both the federal District Court and the Court of Appeals rejected these assertions and confirmed the award. *Dighello* v. *Busconi*, supra, 673 F. Sup. 85.

In addressing these arguments, the District Court cited several factors that illustrated, even beyond the findings of the arbitration panel, the close entanglement among Dighello, By-The-Sea and the previously mentioned corporations. The court noted that Dighello did not challenge the fact that he owned, controlled and dominated the four corporate entities. The court cited the parties' arbitration agreement, which stated: "4. With respect to any disputes between the parties, either unresolved issues not affected by this Agreement or

any future disagreements, the parties agree as follows: (a) Neither shall commence litigation against the other in any court . . . . This specific provision shall apply to all entities owned or controlled by the parties hereto, including but not limited to LUXURY PROPERTIES, INC.; (b) In lieu of litigation, DIGHELLO and BUSCONI expressly agree to arbitrate any such disputes under the rules of the American Arbitration Association at Hartford . . . . "

The court found that the corporations agreed to forego litigation in exchange for arbitrating all disputes involving any and all of the entities owned or controlled by Dighello or Busconi, and that Busconi and Dighello intended to bind nonsignatories to the proceedings when they executed the arbitration agreement. Finally, the court concluded that the arbitration panel had found the corporations so "clearly intertwined" with the project and Dighello that they were merely his alter egos. After citing numerous cases supporting such an analysis, the court affirmed the panel's authority to make such a determination. The court, therefore, denied the defendants' motion to vacate the award, and subsequently granted the plaintiffs' motion to confirm the award. The defendants appealed to the Court of Appeals for the Second Circuit, which affirmed the District Court judgment without opinion.

In March, 1990, the plaintiffs filed a judgment lien against real properties owned by Luxury, Brandy and By-The Sea. The plaintiffs based the lien on the monetary portion of the arbitration award that the federal court had confirmed. In June, 1991, while such debt remained unsatisfied, the plaintiffs sought foreclosure of the judgment lien on real estate owned by the defendants, which action forms the subject of this appeal.[1]

---

[1] In December, 1993, the plaintiffs filed for injunctive relief in the federal District Court. They sought to enjoin the defendants and related entities from interfering with the plaintiffs' efforts to enforce the judgment rendered

After some procedural skirmishing, including several motions and the granting of a motion for default for failure to plead and the granting of a motion to open the default, the defendants Luxury and Brandy each filed an answer and four special defenses to an amended complaint on December 16, 1992. In their special defense, the corporate defendants alleged that they were never served with process in the federal proceeding, were not a party to the agreement requiring the arbitration that ultimately served as a basis for the judgment lien, were not bound by the federal judgment because the federal court had no in personam jurisdiction over them, and were not bound to the arbitration award because it was never confirmed against them in a court of competent jurisdiction having in personam jurisdiction over them.

On March 18, 1994, the plaintiffs filed a reply to the special defenses, asserting that the doctrines of res judicata and collateral estoppel barred these defenses. On March 29, 1994, the plaintiffs moved for summary judgment based on the doctrine of collateral estoppel. The plaintiffs asserted that the defendants were estopped from relitigating the issue of whether the arbitration award bound the corporations Luxury and Brandy because the federal District Court had concluded that the arbitration panel had properly found the corporations to be alter egos of Dighello and had held that the panel properly bound the corporations to the award.

On April 18, 1994, the defendants responded to the motion for summary judgment asserting that the plain-

by the federal court. The same District Court judge who had decided *Dighello* v. *Busconi*, supra, 673 F. Sup. 85 (Zampano, J.), ruled as follows: "In view of the ruling by this court, affirmed by the Second Circuit Court of Appeals, on the precise issues raised by the parties in their moving papers, the applicability of the doctrines of collateral estoppel, and to some extent res judicata, is clear for an appropriate ruling by the state court. Therefore, in respect for the principle of comity, the motion for injunctive relief is denied without prejudice."

tiffs failed to meet their burden of proving that their assertions were true and that no material issues of fact existed. On June 28, 1994, the trial court granted the plaintiffs' motion for summary judgment. The trial court found that the doctrine of collateral estoppel barred the defendants' special defenses because the issues had already been litigated in the arbitration proceeding. Since the defendants had no valid defense against the judgment lien, the trial court found the plaintiffs entitled to judgment as a matter of law.

On October 20, 1994, the plaintiffs moved for a strict foreclosure on property owned by Luxury and Brandy, and on December 12, 1994, the trial court rendered judgment. After the denial of a motion to open, the defendants filed this appeal.

The defendants claim that the trial court improperly granted summary judgment because (1) a genuine issue of material fact exists as to whether the underlying federal judgment and the state judgment lien based on the federal judgment are valid, (2) the doctrine of collateral estoppel should not have been applied to bar the defendants' special defenses and should not have entitled the plaintiffs to a judgment as a matter of law, (3) the plaintiffs failed to address adequately disputed issues of material fact, and (4) the trial court found a debt to be due without evidence. We do not agree with the defendants and conclude that the summary judgment rendered by the trial court should be affirmed.

I

QUESTIONS OF LAW

Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Practice Book § 384 provides: "The judgment sought shall be rendered forthwith if the pleadings, affidavits and any other proof

submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The trial court must "view the evidence in the light most favorable to the nonmoving party." (Internal quotation marks omitted.) *Water & Way Properties* v. *Colt Mfg. Co.*, 230 Conn. 660, 664, 646 A.2d 143 (1994). "Although the party seeking summary judgment has the burden of showing the non-existence of any material fact . . . it [is nevertheless] incumbent upon the party opposing summary judgment to establish a factual predicate from which it can be determined, as a matter of law, that a genuine issue of material fact exists." (Citations omitted; internal quotation marks omitted.) *Wadia Enterprises, Inc.* v. *Hirschfeld*, 224 Conn. 240, 247, 618 A.2d 506 (1992); *Connell* v. *Colwell*, 214 Conn. 242, 251, 571 A.2d 116 (1990). The mere presence of an adverse claim will not in itself defeat the motion. *Wadia Enterprises, Inc.* v. *Hirschfeld*, supra, 247. On the basis of the undisputed procedural history of this case, we find that the trial court properly granted summary judgment.

The defendants claim that there are three issues of material fact in dispute that should have prevented the granting of summary judgment. The first two alleged issues of fact are interrelated and will be addressed together. First, the defendants argue that the plaintiffs incorrectly claim that they obtained a judgment against Brandy and Luxury in federal court. Second, the defendants claim that the judgment lien is invalid because the plaintiffs did not have a valid judgment against the defendants in federal court. The defendants argue that these two issues create a genuine issue of material fact. This issue, however, poses an issue of law, not an issue of fact. Neither party disputes the jurisdictional facts underlying the federal judgment. This case is not about a factual dispute as to whether the corporate defendants were served or named in the action to compel arbitra-

tion or in the action to confirm arbitration. It is undisputed that they were not. Rather, this case concerns whether the plaintiffs are entitled to judgment as a matter of law based on the undisputed procedural history of the case. The question, stated another way, is whether, given the undisputed, relevant facts in this case, the federal court had personal jurisdiction over the corporate defendants, Brandy and Luxury, even though they were not named or served.

In accordance with notions of fairness and due process, a state court may, without violating the principles of comity, look behind a federal judgment to determine whether the federal court that rendered the judgment had jurisdiction. *Dennison* v. *Hyde*, 6 Conn. 507 (1827). Although a party will be collaterally estopped from raising an issue already litigated in a prior proceeding, a party may collaterally attack a judgment on in personam jurisdictional grounds if personal jurisdiction has not been waived. *Samson* v. *Bergin*, 138 Conn. 306, 84 A.2d 273 (1951).

The defendants challenge the enforceability of the judgment lien by claiming that the federal court, which confirmed the arbitration award, lacked personal jurisdiction over the corporate defendants because the corporations neither received service of process nor filed appearances in the plaintiffs' actions to compel arbitration and to confirm the arbitration award. Although the plaintiffs did not serve Brandy and Luxury with the petition to compel arbitration, they did serve the defendants Dighello and By-The-Sea, who responded to the petition. We conclude that the federal court had jurisdiction to render a valid judgment that could form the basis of a judgment lien, and the basis of a foreclosure of that lien in the Connecticut courts despite the lack of service of process or appearance of the corporate defendants in the federal court.

In determining whether the federal court had in personam jurisdiction over the corporate defendants, this court must begin its inquiry with the Federal Arbitration Act. 9 U.S.C. § 1 et seq.; *Metro Industrial Painting Corp.* v. *Terminal Construction Co.*, 287 F.2d 382, 385 (2d Cir.), cert. denied, 368 U.S. 817, 82 S. Ct. 31, 7 L. Ed. 2d 24 (1961). The plaintiffs brought the original action in federal court pursuant to the Federal Arbitration Act. That act outlines the procedures, rights and remedies regarding arbitration proceedings. Once a dispute is covered by the act, federal law applies to all " 'questions of interpretation and construction as well as questions of validity, revocability, and enforceability . . . .' " *Metro Industrial Painting Corp.* v. *Terminal Construction Co.*, supra, 385, quoting *Robert Lawrence Co.* v. *Devonshire Fabrics, Inc.*, 271 F.2d 402 (2d Cir. 1959), cert. granted, 362 U.S. 909, 80 S. Ct. 682, 4 L. Ed. 2d 618, appeal dismissed, 364 U.S. 801, 81 S. Ct. 27, 5 L. Ed. 2d 37 (1960).

In oral argument in this case, the defendants Brandy and Luxury acknowledged that they had participated in the arbitration proceedings and that they are bound by the arbitration award. A person or entity not named in an arbitration proceeding may be brought into the proceeding if that person or entity is found to be an alter ego of a named party. See *Fisser* v. *International Bank*, 282 F.2d 231 (2d Cir. 1960). An arbitration award may be enforced against a nonsignatory who is an instrumentality of a party bound by the arbitration. Id. Therefore, the arbitration panel properly had jurisdiction over Brandy and Luxury, the undisputed alter egos of Dighello.

The legal question to be resolved, therefore, is not whether the *award* is binding on the corporate defendants, but whether the *judgment* that confirmed the award is binding on the corporate defendants. In a case decided on the day that the parties argued this case

before this court, the United States District Court for the District of Connecticut, in an action seeking a prejudgment remedy and seeking an order under the principles of collateral estoppel to prevent the defendants from denying their alter ego status, held that, since an alter ego is considered an indistinguishable entity, jurisdiction over one defendant constitutes jurisdiction over its alter egos. *Northern Tankers (Cyprus) Ltd.* v. *Backstrom*, 901 F. Sup. 72, 77 (D. Conn. 1995). In that case, the plaintiff and one of the defendants, Lexmar Corporation, had submitted a contract dispute to arbitration, and the panel had found Lexmar Corporation liable for $11,172,873.42 in damages. Id., 74–75. While the plaintiff's motion to confirm the arbitration award was pending in District Court, the plaintiff brought an action against Lexmar Corporation and forty-eight other defendants, "alleging that the other defendants [were] all alter-egos of Lexmar [Corporation] and [were] thus liable for Lexmar [Corporation's] obligations." Id., 75.

Several defendants answered the complaint, while others moved to dismiss for lack of personal jurisdiction and insufficient service of process. That court held that "[s]ince an alter ego is considered to be an indistinguishable entity, jurisdiction over the Answering Defendants establishes jurisdiction over their alter egos." Id., 77, citing *Bally Export Corp.* v. *Balicar, Ltd.*, 804 F.2d 398, 405 (7th Cir. 1986); *In re Ocean Ranger Sinking Off Newfoundland*, 589 F. Sup. 302, 310–12 (E.D. La. 1984); *ACS Industries Inc.* v. *Keller Industries, Inc.*, 296 F. Sup. 1160, 1161–63 (D. Conn. 1969). Because an arbitration panel had determined the issue of whether the defendants were alter egos, the defendants had a full and fair opportunity to litigate that issue before the panel. Because the resolution of that issue supported a valid final judgment against the alter ego defendants, probable cause existed to sustain the validity of the plaintiff's claim against the alter ego defendants. *Northern Tankers (Cyprus) Ltd.* v. *Backstrom*, supra, 901 F. Sup. 77.

*Northern Tankers (Cyprus) Ltd.* is not a case of first impression, but simply one more case in which federal courts have held that if an administrative agency or arbitration panel acts in a judicial capacity to resolve disputes and finds facts with an opportunity for the parties to litigate those facts, res judicata should be applied to enforce repose where there has been an opportunity to seek court review of any adverse findings made by the administrative agency or arbitration panel. *United States* v. *Utah Construction & Mining Co.*, 384 U.S. 394, 422, 86 S. Ct. 1545, 16 L. Ed. 2d 642 (1966). If an entity is an alter ego of the signatory to an arbitration agreement, then that alter ego can become obligated to respond to a monetary award of an arbitration panel. *Fisser* v. *International Bank*, supra, 282 F.2d 234–35. A corporation and those who control it are one entity and the acts of one are the acts of all. Id., 234.

The award of the arbitration panel in this case, affirmed by both the federal District Court and the Court of Appeals for the Second Circuit, found Luxury and Brandy to be alter egos of the named and answering defendant, Dighello. By providing notice of the application to confirm to Dighello, the alter egos had notice, and, in fact, they participated in all of the proceedings of the arbitration panel. The corporate defendants do not argue that they did not have notice of the arbitration award or of the confirmation proceeding.

Furthermore, for the purposes of service of application of a motion to confirm an arbitration award pursuant to 9 U.S.C. § 9, state procedural law is applicable under rule 4 (e) (1) of the Federal Rules of Civil Procedure. *Hidrocarburos y Derivados, C.A.* v. *Lemos*, 453 F. Sup. 160, 165 n.7 (S.D.N.Y. 1977). Under Connecticut law, a proceeding to confirm or vacate an arbitration award is not considered a civil action, but rather is a special proceeding in which formal requirements of service do not control. *Middlesex Ins. Co.* v. *Castellano*,

225 Conn. 339, 344, 623 A.2d 55 (1993). Connecticut law, however, requires that an adverse party have notice of an application within a reasonable time and have the opportunity to be heard. Id.

The argument that although Brandy and Luxury are bound by the arbitration award, they are not bound by a judgment confirming the award is rejected. We conclude that collateral estoppel applies to bar the relitigation of their special defenses.

Although substantive federal law applies to claims brought pursuant to the Federal Arbitration Act, state law is similar to the federal law as far as it concerns judgments to confirm arbitration awards.[2] A judgment confirming an award has the same force and effect as a judgment in a civil action and may be enforced in the same way. *Gary Excavating Co.* v. *North Haven*, 163 Conn. 428, 432, 311 A.2d 90 (1972). A final judgment on the merits is conclusive on both the parties and their privies as to the cause of action involved. *Corey* v. *Avco-Lycoming Division*, 163 Conn. 309, 317, 307 A.2d 155 (1972), cert. denied, 409 U.S. 1116, 93 S. Ct. 903, 34 L. Ed. 2d 699 (1973); *James L. Saphier Agency, Inc.* v. *Green*, 293 F.2d 769, 772–73 (2d Cir. 1961). Collateral estoppel, or issue preclusion, derived from the doctrine of res judicata, prohibits subsequent litigation of a different cause of action involving issues determined in a former action between the parties. *Corey* v. *Avco-Lycoming Division*, supra, 317; *Brockett* v. *Jensen*, 154 Conn. 328, 337, 225 A.2d 190 (1966). For a party to use the doctrine of collateral estoppel with success, three requirements must be met. The issue must have been fully and fairly litigated in the first action, it must have been actually decided, and the decision must have been

---

[2] If the Federal Arbitration Act was not involved, the substantive law of Connecticut, due to the diversity of citizenship, would apply. *Erie R. Co.* v. *Tompkins*, 304 U.S. 64, 78, 58 S. Ct. 817, 82 L. Ed. 2d 1188 (1938).

necessary to the judgment. *Corey* v. *Avco-Lycoming Division*, supra, 317; *Brockett* v. *Jensen*, supra, 337. "The principles of collateral estoppel always apply where both of the parties in the second action were present in the first action." *Gionfriddo* v. *Gartenhaus Cafe*, 15 Conn. App. 392, 402, 546 A.2d 284 (1988), aff'd, 211 Conn. 67, 557 A.2d 540 (1989).

In *Corey* v. *Avco-Lycoming Division*, supra, 163 Conn. 318, our Supreme Court addressed this application of collateral estoppel. Pursuant to a collective bargaining agreement, the plaintiff's union and the defendant employer arbitrated a grievance based on a claim of wrongful discharge. After the panel found that the employer did not wrongfully discharge the plaintiff, the commission on human rights and opportunities found in favor of the plaintiff. On appeal, a Superior Court found that the doctrine of collateral estoppel applied to bar the commission from making a finding contrary to the arbitration panel's finding. Id., 315.

Affirming the trial court's decision, our Supreme Court addressed the issue of whether a decision rendered by an arbitration panel constituted a final judgment that could bar subsequent litigation. Id., 316. The court found that the decision of an arbitration panel is a prior adjudication for purposes of res judicata because the determination of arbitration panels, as those of administrative agencies, have purposes similar to those of a court. Id., 319.

In finding that an arbitration proceeding should be given the effect of a judgment for the purposes of res judicata or collateral estoppel, our Supreme Court stated: "No satisfactory reason can be assigned why an award, which the parties have expressly stipulated should be final as to the subject submitted, should not be as conclusive as a court-rendered judgment." Id., 318, citing, among others, *James L. Saphier Agency,*

*Inc.* v. *Green,* supra, 293 F.2d 772–73, for the proposition that a decision by an arbitration panel may be used to invoke res judicata or collateral estoppel. When we apply this principle to the facts of this case, it is clear that the doctrine of collateral estoppel bars the defendants' defenses to the extent they were already litigated in the arbitration proceedings.

The special defenses asserted in this action are identical to the issues litigated in the first proceeding, namely, whether the arbitration panel had the authority to bind Brandy and Luxury to the award. The arbitration panel had addressed this issue and expressly found that the defendants were alter egos of Dighello, the named defendant, and, as such, were liable for and bound to the arbitration award. Therefore, to the extent that the defendants attempted to assert this defense, the trial court properly applied the doctrine of collateral estoppel for the purposes of granting the summary judgment motion in favor of the plaintiffs.

The defendants argue that the plaintiffs failed to show that Brandy and Luxury were in privity with Dighello or By-The-Sea, the parties named in the federal court action to compel arbitration. Since Brandy and Luxury were parties to the arbitration, this privity argument is misplaced. Privity becomes an issue only when a party in the second proceeding was not a party to the first proceeding. *Gionfriddo* v. *Gartenhaus Cafe,* supra, 15 Conn. App. 402.[3]

The defendants assert in their brief that "the liability of the defendants Brandy and Luxury, who were not parties to [the action to confirm the arbitration award], was not an issue [litigated]." After reviewing the arbitra-

[3] Since the named defendants in this action concede that they were parties to the arbitration, the element of mutuality for the purposes of applying offensive collateral estoppel is also not an issue in this case. *Gionfriddo* v. *Gartenhaus Cafe,* supra, 15 Conn. App. 401–406.

tion award, however, which provides a twenty-two page rationale, much of which is devoted to the the liability of the alter egos, and the District Court decision, which exhausts the issue even further, and counsel's admission of the participation in the arbitration proceeding by the defendants Luxury and Brandy, the defendants' argument fails. The purpose of the arbitration proceeding was to determine liability.

We affirm the validity of the judgment lien and the application of the doctrine of collateral estoppel to the defendants' special defenses because the federal court that confirmed the arbitration award, which resulted in this judgment lien, had jurisdiction over the corporate defendants.

## II

## QUESTIONS OF FACT

The defendants next claim that the trial court improperly granted the motion for summary judgment because "ownership" of the real property subject to the lien, a material fact, was in dispute. Although the defendants have correctly classified this issue as a question of fact, the trial court properly found that no material fact in dispute exists.

The defendants assert for the first time in their appellate brief that an issue of material fact exists because in their answer to the plaintiffs' amended complaint they denied that the complaint correctly and accurately describes the land owned by them. On this basis, the defendants argue that the plaintiffs have failed to show that no disputes of material fact exist, and that therefore, the trial court improperly granted the motion for summary judgment.

While the defendants correctly assert that the moving party is required to make a showing that no issues of material fact exist and that they are entitled to judgment

as a matter of law, they are mistaken in arguing that a denial in an answer will defeat a summary judgment motion. "Once the moving party has presented evidence in support of the motion for summary judgment, the opposing party must present evidence that demonstrates the existence of some disputed factual issue. . . . It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. . . . The movant has the burden of showing the non-existence of such issues but the evidence thus presented, if otherwise sufficient, is not rebutted by the bald statement that an issue of fact does exist." (Citations omitted; internal quotation marks omitted.) *Burns* v. *Hartford Hospital*, 192 Conn. 451, 455, 472 A.2d 1257 (1984).

At no time did the defendants provide any affidavits or documents showing a dispute over the description of the property owned by them. Making such an assertion does not create an issue of material fact.

Finally, the defendants argued that the trial court improperly found a debt without evidence. Pursuant to Practice Book § 527, a plaintiff may show evidence of debt by use of an affidavit. The defendants argue that since they have asserted a defense, § 527 no longer applies, and the plaintiffs are required to make further proof of the debt. *Burritt Mutual Savings Bank of New Britain* v. *Tucker*, 183 Conn. 369, 375, 439 A.2d 396 (1981).

The defendants' reliance on the plain reading of § 527 and *Burritt Mutual Savings Bank of New Britain* v. *Tucker*, supra, 183 Conn. 369, is misplaced. In *Burritt Mutual Savings Bank of New Britain*, our Supreme Court held that a party may not rely on § 527, which allows a mortgage debt to be proved by affidavit, where a defense as *to the amount* of the mortgage debt is interposed. *Burritt Mutual Savings Bank of New Brit-*

*ain* v. *Tucker,* supra, 375. Here, the defendants disclaimed all liability to the underlying judgment and presented no evidence or arguments disputing the amount of the debt. This is not a debt based on a promissory note executed in conjunction with a mortgage deed. The federal District Court rendered a judgment on the award. *Dighello* v. *Busconi,* supra, 673 F.2d 85. The award was for a certain sum and that sum is part of the judgment upon which the judgment lien and its foreclosure rest.

Because we find that no dispute over a genuine issue of material fact exists, the plaintiffs are entitled to judgment as a matter of law.

The judgment is affirmed.

In this opinion the other judges concurred.