**Ronald E. FAYER, Plaintiff–Appellant,**

v.

**TOWN OF MIDDLEBURY, Edward St. John, First Selectman, and Eric Ianantuoni, Administrative Assistant, Defendants–Appellees.**

No. 00–9003.

United States Court of Appeals, Second Circuit.

Argued Jan. 16, 2001.

Decided July 24, 2001.

James S. Brewer, West Hartford, CT, for plaintiff-appellant.

Kerry R. Callahan, Updike, Kelly & Spellacy, P.C., Hartford, CT, for defendants-appellees.

Before: Van GRAAFEILAND, NEWMAN, and LEVAL, Circuit Judges.

LEVAL, Circuit Judge:

Plaintiff Ronald E. Fayer brings this action pursuant to 42 U.S.C. § 1983 against his former employer, the Town of Middlebury, Connecticut, and two individu-

al Town officials. Fayer alleges violations of the First and Fourteenth Amendments of the United States Constitution, as well as breach of legal duties arising under state law, in connection with the Town's termination of his employment. Plaintiff contends he was unconstitutionally terminated by reason of his exercise of free speech rights protected by the First Amendment, consisting of his surreptitiously reporting the Town to the Department of Environmental Protection for an oil spill, and his vigorous representation of union interests against the Town as employer. The United States District Court for the District of Connecticut (Joan Glazer Margolis, Magistrate Judge), ruled that plaintiff was precluded by the Full Faith and Credit Statute, 28 U.S.C. § 1738, from bringing this action because the union had disputed the circumstances of plaintiff's termination in two prior arbitrations pursuant to an arbitration clause in the collective bargaining agreement between plaintiff's union and the Town. The Magistrate Judge therefore granted summary judgment dismissing plaintiff's federal claims and declined to exercise jurisdiction over plaintiff's supplemental state law claims. Plaintiff appeals. For the reasons set forth below, we conclude that plaintiff's First Amendment claims are not precluded. Accordingly, we vacate the judgment of the district court and remand for further proceedings.

## BACKGROUND

Defendant Edward St. John, First Selectman of the Town of Middlebury, Connecticut, hired plaintiff Ronald E. Fayer on July 1, 1986, as a mechanic in the Town's Vehicle Maintenance Department. Fayer became a member of Teamsters Local Union No. 677, and in his capacity as mechanic he was covered by the Union's collective bargaining agreement with the Town. The collective bargaining agreement provided, inter alia, that the Town had the right to discharge covered employees "for proper cause." Moreover, the agreement further provided that employees "shall be free from discrimination, coercion or intimidation ... in all matters pertaining to Union activities or to Union membership."

Fayer was promoted to the position of Chief Mechanic in 1988. At some point thereafter, he became a Union Steward. In March 1995, St. John appointed defendant Eric Ianantuoni to a position that included supervisory responsibilities over Fayer and the Vehicle Maintenance Department. Relations between Fayer and Ianantuoni were bad almost from the start. In November, Fayer and Ianantuoni had a conflict over the processing of a Union grievance. In March 1996, Fayer and Ianantuoni had a run-in over Fayer's prioritization of work practices. Ianantuoni complained that Fayer was questioning Ianantuoni's authority, and told Fayer that "the ice is getting very thin." Moreover, Ianantuoni began in March 1996 to question Fayer about certain suspicious invoices charged to the Vehicle Maintenance Department. In particular, Ianantuoni's questions focused on invoices for parts for an "86 Chevy Camaro," a model that the Town did not own. Fayer explained that he owned the automobile for which the parts had been ordered, and thus that the supplier had mistakenly invoiced the Town. Ianantuoni also questioned Fayer about a long-distance telephone call placed from the Department's phone line to the Department of Environmental Protection, Oil and Chemical Spill Response Division ("DEP"). The call had been placed on the same day that an anonymous caller reported the Town to the DEP for an oil spill. Ianantuoni wrote to Fayer: "Perhaps someone can be man enough to take credit for his actions instead of sneaking around like a weasel."

Ianantuoni terminated Fayer on April 3, 1996, citing "intolerable" behavior, a "total lack of cooperation," and a "refusal to work with me." Fayer immediately filed a grievance with the Town, which the Town denied. Under authority of the collective bargaining agreement,[1] the Union then brought a complaint before the Connecticut State Board of Mediation and Arbitration (the "SBMA"), an agency created by the Connecticut state legislature to arbitrate disputes over the interpretation or application of collective bargaining agreements involving state employees. *See* Conn.Gen.Stat. § 5–276(a). At the same time, Fayer filed an unfair labor practices complaint with the Connecticut State Board of Labor Relations, pursuant to the state Municipal Employee Relations Act.

The SBMA held an arbitration hearing on August 9, 1996, and issued a decision in favor of Fayer and the Union on October 7, 1996. The arbitrators found that the "Town did not have just cause to terminate Ron Fayer," and ordered that the termination be converted to a suspension without pay accompanied by the reinstatement of Fayer to his position as Chief Mechanic. The Union filed an application to confirm the arbitration award in Connecticut state court, and the award was confirmed by the Connecticut Superior Court on December 16, 1996.

Despite the SBMA arbitrator's determination, the Town did not reinstate Fayer. Instead, the Town Attorney requested an investigation by the Middlebury Police Department of the Vehicle Maintenance Department's bookkeeping practices. The Police Department found three suspicious invoices from 1993 and 1994, totaling $93.14. Each invoice had been billed to Fayer but paid by the Vehicle Maintenance Department. In addition, the Police Department found approximately sixty invoices that could not be matched to work orders. Nonetheless, because of the age of the three problem invoices and the low monetary value involved, the Police Department decided not to proceed with a formal criminal investigation.

On December 11, 1996, the Town terminated Fayer's employment a second time, citing the three problem invoices and the sixty invoices that could not be matched to work orders. In discharging Fayer, the Town agreed to pay him back wages from the date of the October 7 arbitration award through December 11.

The Union again filed grievances on Fayer's behalf with the Town, and Fayer filed further unfair labor practice complaints with the State Board of Labor Relations. The Union charged that the plaintiff had been terminated without just cause; it did not raise the factual allegations that now underlie Fayer's First Amendment claims. The Town denied the Union's grievance, and the Union sought review under the SBMA arbitration process. At roughly the same time, counsel for the Union entered into a settlement of the unfair labor practices claims Fayer had filed with the Board of Labor Relations. The settlement provided that the dispute between Fayer and the Town "would be adequately addressed by the make whole

---

1. The collective bargaining agreement provided that:

> In the event of a dispute between the Employer and the Union as to the interpretation and application of any clause or clauses in this Agreement, or any supplement thereto, either party may submit the matter for arbitration according to (i) below:

> (i).... The Arbitrator shall be chosen through the auspices and under the rules of the Connecticut State Board of Mediation and Arbitration, and the proceedings shall be conducted under the rules and regulations of the State Board of Mediation and Arbitration, and the cost thereof shall be borne equally by the parties.

remedy available in the Arbitration scheduled before the SBMA." The Town, in turn, agreed to compensate Fayer for vacation days that he had earned before April 3, 1996, as well as for vacation days that he would have earned between April 3, 1996, and December 11, 1996, and to make all health, welfare, and pension fund payments to which Fayer would have been entitled had he been employed between April 3 and December 11.

The SBMA arbitration panel held hearings April 16 and June 5, 1997. The panel decided in favor of the Town, concluding that "[t]he Town had just cause to terminate the Grievant." The Union then brought an action in Connecticut Superior Court to vacate the arbitration award. The Town moved to confirm, and on March 18, 1998, the Superior Court granted the Town's motion, confirming the panel's determination; the Connecticut Appellate Court affirmed the Superior Court judgment on April 4, 2000.

In the meantime, on October 2, 1998, after the Connecticut Superior Court's confirmation of the arbitration decision in favor of the Town, Fayer brought this action in the United States District Court for the District of Connecticut, naming the Town, St. John, and Ianantuoni as defendants, and claiming violations of the First and Fourteenth Amendments in connection with his termination by the Town, as well as state law claims for intentional infliction of emotional distress and defamation. The Magistrate Judge granted summary judgment to defendants, observing that 28 U.S.C. § 1738 required federal courts to grant state court judgments the preclusive effect that such judgments would be granted by the courts of the state issuing the judgment, and ruling that under Connecticut law a final arbitration award is "accorded res judicata or collateral estoppel effect in much the same

manner as a judgment of a court." In the Magistrate Judge's view, the final arbitration award entitled defendants to judgment on Fayer's federal claims. The Magistrate Judge then declined to exercise jurisdiction over Fayer's state law claims. This appeal followed.

## DISCUSSION

We begin by reviewing the lines of authority established by the Supreme Court dealing with the relationship between arbitration agreements and claims under federal law. The first line of cases concerns the preclusive effect of arbitrations conducted under collective bargaining agreements on subsequent litigation arising out of the same underlying facts. Beginning in 1974, with *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974), the Supreme Court ruled in a series of cases that the determinations of labor arbitrators pursuant to collective bargaining agreements do not preclude subsequent federal actions to vindicate certain federal statutory and constitutional rights, at least when those arbitration awards are not confirmed in state or federal court. *See Gardner–Denver Co.*, 415 U.S. at 51–53, 94 S.Ct. 1011 (collective bargaining agreement arbitration does not preclude a subsequent Title VII employment discrimination action arising out of the same underlying facts); *see also McDonald v. West Branch*, 466 U.S. 284, 104 S.Ct. 1799, 80 L.Ed.2d 302 (1984) (claim under 42 U.S.C. § 1983); *Barrentine v. Arkansas–Best Freight System, Inc.*, 450 U.S. 728, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981) (claim under Fair Labor Standards Act). In so ruling, the Court observed that labor arbitrations pursuant to collective bargaining agreements differ significantly from arbitrations pursuant to individually-executed arbitration agreements. The Court noted that "the specialized com-

petence of [labor] arbitrators pertains primarily to the law of the shop, not the law of the land." *Gardner–Denver Co.,* 415 U.S. at 57, 94 S.Ct. 1011. Moreover, the Court explained that in labor arbitrations "the union has exclusive control over the 'manner and extent to which an individual grievance is presented.'" *McDonald,* 466 U.S. at 291, 104 S.Ct. 1799 (quoting *Gardner–Denver,* 415 U.S. at 58 n. 19, 94 S.Ct. 1011). As the Court noted, "the union may present the employee's grievance less vigorously, or make different strategic choices, than would the employee." *Id.* In the course of its discussion, the Court observed that "there can be no prospective waiver of an employee's rights under Title VII." *Gardner–Denver,* 415 U.S. at 51, 94 S.Ct. 1011.

The second line of cases has dealt with the enforceability of individually executed predispute arbitration agreements on federal statutory and constitutional claims. In these cases, dealing not with arbitration clauses in collective bargaining agreements but with employees' own agreements to arbitrate specified disputes, the Court has adopted a more generous view of the extent to which arbitration agreements may waive the right to a federal forum in litigating federal statutory and constitutional claims. Thus, for example, in *Green Tree Financial Corp. v. Randolph,* 531 U.S. 79, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000), and *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991), the Court granted motions to compel arbitration with respect to Truth in Lending Act claims and federal employment discrimination claims under the Age Discrimination in Employment Act, respectively. *See also Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985) (enforcing application of arbitration clause to Sherman Act claims); *Shearson/American Express Inc. v. McMahon,*

482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987) (enforcing application of arbitration clause to Securities Exchange Act and civil RICO claims); *Rodriguez de Quijas v. Shearson/American Express, Inc.,* 490 U.S. 477, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989) (enforcing application of arbitration clause to Securities Act of 1933 claims); *see also Desiderio v. National Ass'n of Securities Dealers, Inc.,* 191 F.3d 198, 203–06 (2d Cir.1999) (enforcing the application of arbitration clauses in individually executed contracts to claims under Title VII).

In *Wright v. Universal Maritime Service Corporation,* 525 U.S. 70, 76, 119 S.Ct. 391, 142 L.Ed.2d 361 (1998), the Supreme Court confronted the question whether a general arbitration clause in a collective bargaining agreement was enforceable to prevent an employee from bringing suit under the Americans with Disabilities Act. The Court noted that there is "obviously some tension" between the cases denying preclusive effect to collective bargaining arbitrations, on the one hand, and the cases holding individual arbitration agreements enforceable as against federal statutory and constitutional claims, on the other. *Wright,* 525 U.S. at 76–77, 119 S.Ct. 391. In particular, the Court observed that "[w]hereas *Gardner–Denver* stated that 'an employee's rights under Title VII are not susceptible of prospective waiver,' *Gilmer* held that the right to a federal judicial forum for an ADEA claim could be waived." *Id.* But the Court avoided that issue, ruling that even assuming (but not deciding) that a collective bargaining agreement arbitration clause may be enforceable to compel arbitration of an employee's ADA claims, such a clause would only be enforced where the contract makes "particularly clear" that it intends to cover such claims. *Id.* at 79, 119 S.Ct. 391. Specifically, collective bargaining agreement waivers of a statutory right to a

judicial forum for claims of employment discrimination, the Court held, "must be clear and unmistakable." *Id.* at 80, 119 S.Ct. 391. And because the particular collective bargaining agreement arbitration clause at issue in *Wright* did not make a "clear and unmistakable" statement that it covered claims of employment discrimination, the Court found it unnecessary to reach the question whether upon a clear statement, collective bargaining agreements may validly waive an individual's right to a judicial forum for federal statutory claims. *See id.* at 77, 82, 119 S.Ct. 391.[2]

■ As in *Wright,* the collective bargaining labor arbitration clause at issue here would not have been enforceable in the first instance to prevent Fayer from litigating his federal constitutional claims. The clause merely provides for arbitration of disputes "as to the interpretation and application of any clause or clauses in th[e] [Collective Bargaining] Agreement."[3] This clause is even narrower than the arbitration clause that was at issue in *Wright,* which purported to extend to "all matters affecting wages, hours, and other terms and conditions of employment." *Wright,* 525 U.S. at 73, 119 S.Ct. 391. Fayer was therefore free to bring his First Amendment claims in a court action, independent

of the union arbitration, and he did so. *See Rogers v. New York University,* 220 F.3d 73, 75 (2d Cir.2000) (collective bargaining arbitration provisions are unenforceable insofar as they purport to waive an employee's right to a federal forum in an action based on federal employment discrimination statutes); *Tran v. Tran,* 54 F.3d 115, 117–18 (2d Cir.1995) (same).

It follows from *Wright* that under the terms of the collective bargaining agreement between the Town and the Union, Fayer could not have been compelled to bring his federal constitutional claims to the labor arbitrators. Furthermore, *Gardner–Denver* teaches that the arbitration award prior to confirmation did not impair Fayer's ability to pursue his constitutional claims. The next question is whether the Connecticut court's confirmation of the award in favor of the Town, an award resulting from an arbitration in which Fayer's constitutional claims were not presented, precludes his litigation of those claims in the federal courts.

■ The mandate of 28 U.S.C. § 1738 requires that "judicial proceedings [of any court of any State] shall have the same full faith and credit in every court within the United States ... as they have ... in the Courts of such State."[4] The statute re-

2. In this Circuit, we have reached the question left open by *Wright* and held that an arbitration clause in a union collective bargaining agreement is not enforceable against an individual employee's ADA and Family and Medical Leave Act claims. *See Rogers v. New York University,* 220 F.3d 73, 75 (2d Cir. 2000); *see also Tran v. Tran,* 54 F.3d 115, 117–18 (2d Cir.1995) (holding that employer could not compel employee to bring employee's Fair Labor Standards Act claims to arbitration pursuant to collective bargaining agreement arbitration clause). In *Rogers,* we noted that even if such arbitration clauses were enforceable (and we observed that *Wright* could be read to suggest that they were), the arbitration clause at issue in *Rogers* did not "clearly and unmistakeabl[y]" waive

employees' rights to go to federal court on their federal statutory employment claims. *See Rogers,* 220 F.3d at 75–76.

3. The arbitration clause may also be ambiguous as to whether it requires arbitration or merely permits arbitration, since it provides that "either party *may* submit [a] matter for arbitration" (emphasis added). We need not reach this issue here, since it is abundantly clear that the clause would be unenforceable as against federal statutory and constitutional claims under *Wright.*

4. Section 1738 was not relevant in the *Gardner–Denver* type cases because "arbitration is not a 'judicial proceeding,' and, therefore,

quires that we "give the same preclusive effect to [the] state Court judgments that those judgments would be given in the courts of the State from which the judgments emerged." *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 466, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982); *see also Migra v. Warren City Sch. Dist.*, 465 U.S. 75, 81, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984). It poses the question whether Connecticut courts would give the judicial proceedings in which the arbitration award was confirmed preclusive effect barring litigation of Fayer's First Amendment claims. We conclude that Connecticut courts would not give preclusive effect to the confirmation judgment at issue here.

■ In Connecticut, the doctrine of res judicata establishes that a prior judgment on a particular cause of action "is conclusive with respect to any claims relating to the cause of action which were actually made *or might have been made.*" *Corey v. Avco–Lycoming Div.*, 163 Conn. 309, 307 A.2d 155, 160 (1972) (emphasis added). A judgment therefore does not preclude claims that could not have been made in the forum from which the judgment issues. As the Restatement explains, the general rule of claim preclusion "does not apply to extinguish the claim" in a second action where the "plaintiff was unable to rely on a certain theory of the case or to seek a certain remedy . . . in the first action because of the limitations on the subject matter jurisdiction of the courts." *Restatement (Second) of Judgments* § 26(1)(c) (1982); *see also id.* cmt. (c) (noting that the general rule of claim preclusion "assum[es] that the jurisdiction in which the first judgment was rendered was one which put no formal barriers in the way of a litigant's presenting to a court in one action the entire claim," and stating

further that "[w]hen such formal barriers in fact exist[ ] and [are] operative against a plaintiff in the first action, it is unfair to preclude him from a second action in which he can present those phases of the claim which he was disabled from presenting in the first").

■ Connecticut statutes set out a special narrow procedure for confirming, vacating, or modifying arbitration awards. Such proceedings are initiated by an application and heard at a "short calendar session . . . in order to dispose of the case with the least possible delay." Conn.Gen. Stat. § 52–420(a). A proceeding to confirm, vacate, or modify "is not considered a civil action, but rather is a special proceeding." *Busconi v. Dighello*, 39 Conn.App. 753, 668 A.2d 716, 723 (1995). Courts in such a special arbitration review proceedings may review an arbitrator's award only for corrupt procurement of the award, evident partiality of the arbitrators, arbitrator misconduct, arbitrators' expansion of their powers, and failure to render a "mutual, final and definite award." Conn.Gen. Stat. § 52–418(a). " 'Courts will not review the evidence nor, where the submission is unrestricted [by any contractual limitations], will they review the arbitrators' decision of the legal questions involved.' " *AFSCME Council 15, Local 3153 v. Town of Newtown*, 49 Conn.App. 443, 717 A.2d 759, 761 (1998) (quoting *Metropolitan Dist. Comm'n v. AFSCME Council 4, Local 3713*, 35 Conn.App. 804, 647 A.2d 755, 757 (1994)). Connecticut courts have treated the limitations on their authority in confirmation proceedings as jurisdictional. *See Harry Skolnick and Sons v. Heyman*, 7 Conn.App. 175, 508 A.2d 64, 67 (1986) (reversing a lower court's ruling in an arbitration confirmation proceeding because "the court had no jurisdiction under the arbitration statute

§ 1738 does not apply to arbitration awards." *McDonald v. City of West Branch*, 466 U.S.

284, 288, 104 S.Ct. 1799, 80 L.Ed.2d 302 (1984).

to confirm ... nonarbitration determinations"). Thus the Connecticut courts that heard the proceedings to confirm the award in the Town's favor did not have the authority to entertain the federal constitutional claims that Fayer now asserts.[5]

■ These general principles of Connecticut preclusion law have been supplemented by a state statute designed to preserve employees' rights to pursue causes of action arising under the state and federal constitutions or under a state statute. Section 31–51bb of the Connecticut General Statutes provides that

No employee shall be denied the right to pursue, in a court of competent jurisdiction, a cause of action arising under the state or federal constitution or under a state statute solely because the employee is covered by a collective bargaining agreement.

Conn. Gen.Stat. § 33–51bb. On its face, the statute might seem to apply only to the question whether an employee may be required to arbitrate certain constitutional and statutory claims pursuant to a collective bargaining agreement's arbitration clause, rather than to the slightly different question whether an arbitration award precludes subsequent litigation arising out of a common nucleus of operative fact. In *Genovese v. Gallo Wine Merchants, Inc.*, 226 Conn. 475, 628 A.2d 946 (1993), however, the Connecticut Supreme Court held that Section 31–51bb requires that courts not grant preclusive effect to the unconfirmed determinations of arbitrators with respect to state constitutional and statutory claims and federal constitutional claims. The plaintiff in *Genovese* claimed that his discharge was retaliation against him for

having filed certain workers' compensation claims. Pursuant to a collective bargaining agreement arbitration clause, plaintiff's claims were brought before an arbitration panel that was presented the question: "Did the grievant ... voluntarily quit or was he unjustly terminated by the company?" *Genovese*, 628 A.2d at 947. The Connecticut Supreme Court held that Section 31–51bb mandates not just that collective bargaining agreement arbitration clauses are unenforceable against constitutional or statutory claims, but also that "employees covered by a collective bargaining agreement retain the right to pursue a statutory action despite an adverse determination in a grievance or arbitration proceeding." *Id.* at 951.

In light of Connecticut preclusion law principles, the limited jurisdiction of Connecticut courts hearing petitions to confirm or vacate arbitration awards, and the policy against arbitral preclusion evinced by Section 31–51bb and *Genovese*, we conclude that on the facts of this case Connecticut courts would not grant preclusive effect to the state court confirmation judgments so as to bar Fayer from litigating his federal First Amendment claims. Under Section 1738, we likewise will not give it such preclusive effect. *See Bottini v. Sadore Management Corp.*, 764 F.2d 116, 121 (2d Cir.1985); *see also Ryan v. City of Shawnee*, 13 F.3d 345 (10th Cir.1993); *Jalil v. Avdel Corp.*, 873 F.2d 701 (3d Cir. 1989); *Kirk v. Board of Ed.*, 811 F.2d 347 (7th Cir.1987).[6]

In conclusion, under *Wright*, Fayer had no obligation to raise these federal claims in the arbitration mandated by the collective bargaining agreement. The Connecti-

---

**5.** Nor could Fayer have joined his Section 1983 claims to the unfair labor practices complaints that he filed with the State Board of Labor Relations and that he later settled. The Board of Labor Relations may only hear claims of violations of the state's labor rela-

tions code. *See* Conn.Gen.Stat. § 7 471(5). By statute, therefore, the Board had no authority to entertain Fayer's federal constitutional claims.

**6.** We do not mean to imply that the result necessarily would be different if Connecticut's

cut court's confirmation of an arbitration award in a proceeding brought by the Union under a general arbitration clause of a collective bargaining agreement that did not clearly cover such federal claims did not, under Connecticut's law of preclusion, preclude Fayer's subsequent assertion of those claims. Under Section 1738, we likewise do not give preclusive effect to the Connecticut court judgment.

## CONCLUSION

The judgment of the district court is vacated, and the case is remanded to the Magistrate Judge for further proceedings.

procedural law provided that a petition to confirm or set aside an arbitration award is brought in a Connecticut court exercising general jurisdiction—one that would be authorized to hear Fayer's constitutional claims jointly with its review of the arbitration. The purpose of the Supreme Court's decision in *Wright* is to ensure that an employee with a federal statutory or constitutional claim will be able to bring the claim in court notwithstanding a general arbitration clause contained in a collective bargaining agreement. If the claimant's ability to join his federal claim in the proceeding to review the arbitration award resulted in a preclusion of the federal claim by the decision confirming the arbitration award, this would substantially undermine *Wright*'s objective. It is therefore at least conceivable that federal law preserving the employee's right to bring his federal claim in court would take precedence over the state's law of preclusion.