[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON PLAINTIFFS' MOTION TO VACATE ARBITRATION AWARD AND DEFENDANTS' MOTION TO CONFIRM AWARD
 FACTS
On February 3, 1999, Susan Guzzo and Ernie Coleman entered into a written contract with Cherry Oak Development, LLC (Cherry Oak), for the construction of a residential dwelling in Brookfield, Connecticut. The contract contained a broad arbitration clause which provided in relevant CT Page 16207 part: "During and after construction all claims, disputes and other matters in question arising out of, or relating to, this Contract or the breach thereof, shall be decided by arbitration . . . and the decision in any such matter shall be final and binding upon the parties. . . ." (Application to Vacate, Exhibit A, p. 6.) Conflicts arose during construction, and Guzzo and Coleman filed a written demand for arbitration with the American Arbitration Association. They named as respondents both Cherry Oak and James E. Ek, a member of Cherry Oak in charge of day-to-day operations who had signed the contract on behalf of Cherry Oak. Ek filed a timely objection to the arbitration on the ground that he did not sign the contract in a personal capacity but, rather, as president of the corporation and, therefore, could not be compelled to arbitrate. (Application to Vacate, Exhibit C.) Despite his objection, Ek proceeded with the arbitration hearing, during which hearing both sides presented extensive testimony and documentary evidence, including evidence as to Ek's personal liability under the contract. (Objection to Application to Vacate, Exhibit E.) On May 24, 2001, the arbitrator awarded Guzzo and Coleman $97,979.06, which award included both Cherry Oak and Ek as respondents. (Application to Vacate, Exhibit D, p. 3.) On June 22, 2001, Ek and Cherry Oak filed this application to vacate the arbitration award as against Ek on the ground that Ek was not a signatory to the contract and therefore never entered into an arbitration agreement with Guzzo and Coleman.[1] (Application to Vacate, p. 3, ¶ 14.) Cherry Oak and Ek also moved to vacate, modify or correct the arbitrator's findings with respect to approximately twenty of Coleman's and Guzzo's claims on the ground that the arbitrator "failed to conform [his] award to the laws of the State of Connecticut," thereby exceeding his powers and/or so imperfectly executing them "that a mutual, final and definite award upon the subject matter submitted was not made." (Application to Vacate, p. 5, ¶ 14.) Cherry Oak and Ek have briefed, however, only the issue of Ek's individual liability under the arbitration award. Because they failed to brief their other claims, the court shall consider those claims abandoned.[2]
 STANDARD OF REVIEW
"[T]here are two procedural routes by which a party may preserve the issue of the arbitrability of a particular dispute for judicial determination. First, a party may refuse to submit to arbitration at the outset and instead compel a judicial determination of the issue of arbitrability. . . . Alternatively, threshold questions of arbitrability may properly be committed to the arbitrators themselves for determination under the terms of the contract, along with the merits of the underlying dispute. . . . In such cases a court, on a motion to vacate, may properly entertain a challenge to an award alleging disregard of the limits in the parties' agreement with respect to arbitration. . . . Thus, the mere CT Page 16208 conformity of the submission to the award does not foreclose the court from reviewing whether that award is in violation of the parties' agreement." (Citations omitted; internal quotation marks omitted.) Whitev. Kampner, 229 Conn. 465, 476, 641 A.2d 1381 (1994). "Although the courts of this state encourage arbitration as a means of alternative dispute resolution, there are limits to this policy. Arbitration is a creature of contract and without a contractual agreement to arbitrate there can be no arbitration. . . . No one can be directed to arbitrate a dispute who has not previously agreed to do so. . . ." (Citation omitted; internal quotation marks omitted.) Scinto v. Sosin, 51 Conn. App. 222,227, 721 A.2d 552 (1998). "Whether a particular dispute is arbitrable is a question for the court, unless, by appropriate language, the parties have agreed to arbitrate that question, also." (Internal quotation marks omitted.) Welch Group, Inc. v. Creative Drywall, Inc., 215 Conn. 464,467, 576 A.2d 153 (1990). In determining whether an individual is subject to the arbitration provisions in a contract, "judicial inquiry . . . must be strictly confined to the question whether the reluctant party did agree to arbitrate the grievance. . . . An order to arbitrate the particular grievance should not be denied unless it may be said with positiveassurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." (Emphasis in original; internal quotation marks omitted.) Fink v. Golenbock, 238 Conn. 183,195, 680 A.2d 1243 (1996).
Cherry Oak and Ek assert, and Coleman and Guzzo do not dispute, that Ek signed the construction contract as a member and on behalf of Cherry Oak. The contract itself indicates plainly that the three parties to the contract were Susan Guzzo, Ernie Coleman and Cherry Oak Development, LLC, signed "by" James Ek as a "member of Cherry Oak." (Application to Vacate, Exhibit A, p. 8.) These facts place this case squarely under the rule of Scinto v. Sosin, supra, 51 Conn. App. 227, that only signatories to a contract can be compelled to arbitrate disputes arising out of that contract. There, as here, the president and owner of a construction company signed a contract on behalf of the company, which contract contained an arbitration agreement. In addition to the construction contract, the owner also executed a personal guarantee of his company's performance of the contract. Scinto v. Sosin, supra, 51 Conn. App. 225. Disputes arose and the opposing side sought to force the owner into arbitration based on his personal guarantee of the contract. The trial court enjoined arbitration as against the owner and the Appellate Court affirmed, agreeing that "`a non signatory guarantor of an agreement containing an arbitration provision may be bound by the arbitration provision [only] when the particular guaranty explicitly incorporates the underlying agreement by reference.'" (Emphasis in original.) Id., 236, quoting Grundstad v. Ritt, 106 F.3d 201, 204 n. 4 (7th Cir. 1997). CT Page 16209
Coleman's and Guzzo's argument that the facts in this case warranted the arbitrator's decision to "pierce the corporate veil" and bind Ek personally to the arbitration proceedings begs the question. (Defendants' Objection, p. 6.) The issue is not whether the arbitrator decided the legal issue surrounding Ek's personal liability properly but, rather, whether the matter was properly before the arbitrator in the first place. Indeed, the United States Supreme Court addressed this very issue in First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938.115 S.Ct. 1920,131 L.Ed.2d 985 (1995). a case precisely on point and which sets out the appropriate framework for deciding the question presently before the court.
"The first question-the standard of review applied to an arbitrator's decision about arbitrability-is a narrow one. To understand just how narrow, consider three types of disagreement present in this case. First, the [parties] disagree about whether [Ek is] personally liable [for damages resulting from Cherry Oak's breach of contract]. That disagreement makes up the merits of the dispute. Second, they disagree about whether they agreed to arbitrate the merits. That disagreement is about the arbitrability of the dispute. Third, they disagree about whoshould have the primary power to decide the second matter. Does that power belong primarily to the arbitrators (because the court reviews their arbitrability decision deferentially) or to the court (because the court makes up its mind about arbitrability independently)? We consider here only this third question.
"Although the question is a narrow one, it has a certain practical importance. That is because a party who has not agreed to arbitrate will normally have a right to a court's decision about the merits of its dispute (say, as here, its obligation under a contract). But, where the party has agreed to arbitrate, he or she, in effect, has relinquished much of that right's practical value. The party still can ask a court to review the arbitrator's decision, but the court will set that decision aside only in very unusual circumstances. . . . Hence, who — court or arbitrator — has the primary authority to decide whether a party has agreed to arbitrate can make a critical difference to a party resisting arbitration.
"We believe the answer to the "who' question (i.e., the standard-of-review question) is fairly simple. Just as the arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that dispute . . . so the question "who has the primary power to decide arbitrability' turns upon what the parties agreed about that
matter. Did the parties agree to submit the arbitrability question itself to arbitration? If so, then the court's standard for reviewing the arbitrator's decision about that matter should not differ from the CT Page 16210 standard courts apply when they review any other matter that parties have agreed to arbitrate. . . . That is to say, the court should give considerable leeway to the arbitrator, setting aside his or her decision only in certain narrow circumstances. . . . If, on the other hand, the parties did not agree to submit the arbitrability question itself to arbitration, then the court should decide that question just as it would decide any other question that the parties did not submit to arbitration, namely, independently. These two answers flow inexorably from the fact that arbitration is simply a matter of contract between the parties; it is a way to resolve those disputes — but only those disputes — that the parties have agreed to submit to arbitration. . . .
 * * *
"When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally (though with a qualification we discuss below) should apply ordinary state-law principles that govern the formation of contracts. . . .
"This Court, however, has (as we just said) added an important qualification, applicable when courts decide whether a party has agreed that arbitrators should decide arbitrability: Courts should not assume that the parties agreed to arbitrate arbitrability unless there is clea[r] and unmistakabl[e] evidence that they did so." (Citations omitted; emphasis in original; internal quotation marks omitted.) Id., 942-44.
There is no evidence before this court, nor do Coleman and Guzzo point to any, to suggest that Ek agreed to arbitration. Indeed, the only evidence before the court — the contract — indicates plainly that he was not a party to the arbitration agreement. The arbitrator was consequently without authority to arbitrate the issue of Ek's personal liability under the contract. "No one can be directed to arbitrate a dispute who has not previously agreed to do so. . . ." (Internal quotation marks omitted.) Scinto v. Sosin, supra, 51 Conn. App. 227. There is, as the defendants rightly argue, a body of law that allows "[a] person or entity not named in an arbitration proceeding [to] be brought into the proceeding if that person or entity is found to be an alter ego of a named party." Busconi v. Dighello, 39 Conn. App. 753, 764,668 A.2d 716 (1995). "An arbitration award may [also] be enforced against a nonsignatory who is an instrumentality of a party bound by the arbitration." Id. Whether the facts warranted bringing Ek into the arbitration proceeding in the first place, or warrant enforcing the arbitration award against him now, however, is a question strictly for the court to decide. This court, however, cannot decide the latter CT Page 16211 question based on the record before it, which consists only of Coleman's and Guzzo's assertion that during the arbitration hearing they "alleged and presented sufficient evidence to demonstrate that Respondent Ek misrepresented his qualifications and .committed fraud in his capacity as the president and owner of Respondent Cherry Oak. . . ."[3] (Memorandum of Law in Support of Motion to Confirm, p. 6.) Accordingly, Cherry Oak and Ek's application to vacate the arbitration award against Ek is granted. Coleman and Guzzo's application to confirm the award is granted as against Cherry Oak but denied as against Ek.
White, J.